## EMBREE v. KANSAS CITY AND LIBERTY BOULEVARD ROAD DISTRICT.

### ERROR TO THE SUPREME COURT OF THE STATE OF MISSOURI.

No. 187.   Argued January 18, 19, 1916.—Decided February 21, 1916.

Where a taxing district is not established by the legislature, but by exercise of delegated authority, there is no legislative decision that its location, boundaries and needs are such that the lands therein are benefited, and it is essential to due process of law that the landowners be accorded an opportunity to be heard on the question of benefits.

Where a statute delegating authority for establishment of taxing districts provides for a hearing on the question of benefits, the decision of the designated tribunal is sufficient; and, unless made fraudulently or in bad faith, due process is not denied.

A statute requiring adequate public notice of the time and place of presentation of the petition for the creation of a tax district and providing for presentation of remonstrances with power to the designated tribunal to hear the petition and remonstrances and to make such changes in the boundaries of the proposed district as the public good may require, not only contemplates a hearing, but authorizes the tribunal to so adjust the boundaries as to include

only such lands as may reasonably be expected to be benefited by the improvement.

There is an inseparable union between the public good and due regard for private rights.

An adequate hearing may be had before a delegated tribunal authorized to establish taxing districts for roads and to declare what lands shall be included therein as being benefited and due process of law accorded to the owners, although the particular roads to be improved may not have been designated.

A legislative act establishing zones of benefits with graduated ratings for assessments in districts lawfully created does not deny due process of law where it does not provide for a hearing on this particular feature, unless the legislative apportionment is so arbitrary and devoid of any reasonable basis as to amount to an abuse of power.

Although no hearing may be afforded to owners of land within a taxing district on the appraisal of their lands for the purpose of apportioning the tax, if such a hearing is accorded when the tax is sought to be enforced, due process of law is not denied.

Revised Stat. Missouri 1909, c. 102, art. 7, and Missouri Laws 1911, 373, providing for establishment of road improvement districts and the issuing of bonds and levying of special taxes therefor, are not unconstitutional under the due process provision of the Fourteenth Amendment.

257 Missouri, 593, affirmed.

THE facts, which involve the constitutionality under the Fourteenth Amendment of proceedings under the applicable statute of Missouri for issuing and selling road district bonds and levy of special taxes to pay them, are stated in the opinion.

*Mr. Harris L. Moore,* with whom *Mr. John M. Cleary* and *Mr. James F. Simrall, Mr. Ernest Simrall* and *Mr. W. A. Craven* were on the brief, for plaintiff in error:

Where the power to determine the boundaries of the benefit district, and what property shall be assessed to pay for an improvement, is delegated to a non-legislative body, due process of law demands notice and a hearing on

whether the property so marked out for taxation is, in fact, benefited. *Fallbrook District* v. *Bradley*, 164 U. S. 170; *Argyle* v. *Johnson*, 118 Pac. Rep. 487; *Spencer* v. *Merchant*, 125 U. S. 345; *Soliah* v. *Haskin*, 222 U. S. 522; *In re Kissel Ave.*, 143 N. Y. Supp. 467; *Bauman* v. *Ross*, 167 U. S. 548.

While it is true that ordinarily a benefit assessment that must be collected by suit cannot be said to be wanting in due process of law, yet if in such suit the property owner cannot have tried the question of whether his property is benefited, then such suit does not constitute due process of law as to that question, or supply the lack of a hearing thereon. *Londoner* v. *Denver*, 210 U. S. 373, 385; *In re Riverside Park*, 138 N. W. Rep. 426; *Argyle* v. *Johnson*, 39 Utah, 500; *Central of Georgia Ry.* v. *Wright*, 207 U. S. 127; *Norwood* v. *Baker*, 172 U. S. 269.

The decision of the Supreme Court of Missouri, in so far as it construes the statute in question, is conclusive, and where it has held that the statute contains a legislative determination of the benefit district, then that is a conclusive decision that there is no hearing on that question, when suit is brought to collect. *Central of Georgia Ry.* v. *Wright*, 207 U. S. 127.

While the fact that a benefit assessment is to be collected by suit ordinarily constitutes due process of law, yet when a benefit assessment has become a final lien, divided into twenty installments, recorded in the public records as a lien on the land, and sold for cash, even if it is a fact that each property owner may defend each of the twenty suits required to be brought against each separate piece of property, being subject to heavy penalties and attorneys' fees in case of failure to make good the defense in whole or in part, there is neither such timely nor adequate hearing as is necessary to constitute due process of law. See cases *supra*.

*Mr. William M. Williams* and *Mr. Claude Hardwicke* for defendants in error.

MR. JUSTICE VAN DEVANTER delivered the opinion of the court.

This is a suit to restrain the issue and sale of road district bonds and the levy and recordation of special taxes to pay them. A trial of the issues resulted in a judgment for the defendants, which at first was reversed and on a rehearing was affirmed. 257 Missouri, 593. The plaintiffs prosecute this writ of error.

When the suit was begun the road district had been organized, a road had been selected for improvement and preliminary steps had been taken for issuing the bonds and levying the special taxes—all conformably to the local statute. Rev. Stat. Mo. 1909, c. 102, art. 7; Mo. Laws 1911, 373. The district is about seven miles in length and three in width, and is bounded on the greater part of one side by the Missouri River. The road selected for improvement extends through the district in the direction of its length. The cost of the improvement is to be met temporarily by the issue and sale of bonds and ultimately by the levy and collection of special taxes upon all the lands in the district. The cost is to be apportioned by rating the lands—without the buildings thereon—at their full fair value where lying within one mile of the road, at seventy-five per cent. of such value where lying between one and two miles from the road and at fifty per cent. of such value where lying more than two miles therefrom (all seem to be within two miles here), and then charging each tract with a share of the entire cost corresponding to its proportion of the value of all the lands as so rated. The lands are appraised by the district commissioners and the cost of the improvement is apportioned by the county clerk.

The plaintiffs own lands within the district and object to the issue of the bonds and to the levy of the special taxes, upon the ground that the scheme for subjecting the lands to the payment of the cost is repugnant to the due process clause of the Fourteenth Amendment to the Constitution of the United States in that the land owner is not afforded any opportunity to be heard on the questions whether his lands will be benefited by the improvement, whether, if benefited, the benefits in the different zones will be in accord with the graduated ratings before indicated, and whether the appraisement of his lands for the purposes of the apportionment is fair.

The district was not established or defined by the legislature but by an order of the county court made under a general law. Whether there was need for the district and, if so, what lands should be included and what excluded was committed to the judgment and discretion of that court subject to these qualifications: First, that the district should contain at least 640 acres of contiguous land and be wholly within the county; second, that the court's action should be invoked by a petition signed by the owners of a majority of the acres in the proposed district, and, third, that public notice—conceded to be adequate—should be given, by the clerk of the court, of the presentation of the petition and the date when it would be considered, and that owners of land within the proposed district should be accorded an opportunity to appear, either collectively or separately, and oppose its formation. In this connection the statute says: "The court shall hear such petition and remonstrance, and shall make such change in the boundaries of such proposed district as the public good may require and make necessary, and if after such changes are made it shall appear to the court that such petition is signed or in writing consented to by the owners of a majority of all the acres of land within the district as so changed, the court shall make a prelim-

inary order establishing such public road district, and such order shall set out the boundaries of such district as established . . . but the boundaries of no district shall be so changed as to embrace any land not included in the notice made by the clerk unless the owner thereof shall in writing consent thereto, or shall appear at the hearing, and is notified in open court of such fact and given an opportunity to file or join in a remonstrance." The order actually made shows that four of the present plaintiffs, with three others, appeared in opposition to the petition, recites that "the court, after hearing and considering said petition and said protests and remonstrances and all evidence offered in support thereof, finds that the public good requires and makes necessary the organization, formation and creation of such proposed public road district . . . with boundaries as stated in said petition," and sets out the boundaries of the district as established.

The sole purpose in creating the district, as the statute shows, was to accomplish the improvement of public roads therein—the particular roads to be designated by the district commissioners and an approving vote of the land owners.

As the district was not established by the legislature but by an exercise of delegated authority, there was no legislative decision that its location, boundaries and needs were such that the lands therein would be benefited by its creation and what it was intended to accomplish, and, this being so, it was essential to due process of law that the land owners be accorded an opportunity to be heard upon the question whether their lands would be thus benefited. If the statute provided for such a hearing, the decision of the designated tribunal would be sufficient, unless made fraudulently or in bad faith. *Fallbrook Irrigation District* v. *Bradley,* 164 U. S. 112, 167, 174–175.

Did the statute contemplate such a hearing? We have

seen that it required that adequate public notice be given· of the presentation of the petition for the creation of the district and the time when it would be considered, made provision for the presentation of remonstrances by owners of lands within the proposed district, and directed that the petition and remonstrances be heard by the county court, that the court make such change in the boundaries "as the public good may require" and that the boundaries be not enlarged unless the owners of the lands, not before included consent in writing or appear at the hearing and be given an opportunity to present objections. That a hearing of some kind was contemplated is obvious, and is conceded. But it is insisted that it was not to be directed to the question whether the lands included would be benefited by the creation of the district and what it was intended to accomplish. If that were so, there would be little purpose in the hearing and no real necessity for it.

True, the statute does not in terms say that lands which will not be benefited shall be excluded or that only such as will be benefited shall be included, but it does say that the court shall make such change in the proposed boundaries "as the public good may require." In the presence of this comprehensive direction there can be no doubt that the legislature intended to authorize and require the county court to adjust the boundaries so they would include only such lands as might be reasonably expected to be benefited by the improvement of the district roads and therefore might be properly charged with the cost of that work. That there is an inseparable union between the public good and due regard for private rights should not be forgotten.

Of course, the nature and extent of the hearing contemplated by the statute is a question of local law, and if it were clear that the Supreme Court of the State had settled it we should accept and follow that ruling. Whether

the question has been settled is at least uncertain. In the principal opinion delivered on the original hearing that court said: "We hold that the General Assembly in granting to land owners of a proposed road district the privilege of being heard by remonstrance intended that such land owners should have the right in such remonstrance to urge against the organization of the district or the inclusion of their lands therein any statutory or constitutional grounds which such land owners may possess; and that if such grounds be valid the court may exclude the lands of the remonstrants or refuse to incorporate the proposed district. This ruling is rendered necessary to avoid the conclusion that the General Assembly directed a hearing without intending that any relief might thereby be obtained." That opinion, although copied into the record, does not appear in the Missouri Reports. They contain only the opinion delivered on the rehearing. The former may have been entirely recalled. If so, the question dealt with in the quotation made from it has not been settled, for the later opinion is silent upon the subject. But whether the question be settled or open is not of much importance, for, as before indicated, our view of the statute accords with that expressed by the state court in the excerpt from the first opinion.

We conclude therefore that the statute did provide for according the land owners an opportunity to be heard, when the district was created, upon the question whether their lands would be benefited, and also that the order establishing the district shows that the statute was complied with in that regard.

But in opposition to this conclusion it is urged that an adequate hearing could not be had at that time because the road to be improved had not been selected and no one could say what lands would be benefited. We are not impressed with this contention. As was well under-

stood, the purpose in creating the district was to bring about the improvement of its roads. Their number, location and condition were known, as was also the extent and nature of their use. The district was of limited area and the proximity or relation of every part to each road was patent. As applied to such a situation, we perceive no serious obstacle to determining with approximate certainty and satisfaction whether the improvement of any one or more of the roads—even though no particular one was as yet selected—would be of benefit throughout the district. We say with approximate certainty and satisfaction, because this is all that is required. At best the question is one of opinion and degree, even where the improvement to be made has been definitely determined. The boundaries of drainage, irrigation and other benefit districts are often defined in this way. Indeed, it is conceded that had the legislature created this particular district the present objection would be untenable. If such a body can obtain the requisite information and exercise the requisite judgment, it is not easy to believe that the task would be more difficult for a county court sitting in the vicinity.

The claim that the land owners are entitled to a hearing on the question whether the benefits in the different zones will be in accord with the graduated ratings of their lands is not seriously pressed upon our attention and requires but brief notice. The ratings are not fixed in the exercise of delegated authority but by the statute itself, which must be taken as a legislative decision that in a district lawfully constituted, in the manner before indicated, the benefits to the lands in the different zones will be in approximate accord with the ratings named. This being so, no hearing is essential to give effect to this feature of the apportionment. A legislative act of this nature can be successfully called in question only when it is so devoid of any reasonable basis as to be essentially arbitrary and

an abuse of power (*Wagner* v. *Leser*, 239 U. S. 207; *Houck* v. *Little Drainage District*, 239 U. S. 254; *Myles Salt Co.* v. *Iberia Drainage District*, 239 U. S. 478; *Gast Realty Co.* v. *Schneider Granite Co.*, 240 U. S. 55. And see *Bi-Metallic Investment Co.* v. *State Board of Equalization*, 239 U. S. 441, 445–446), which obviously is not the case here.

The claim that the land owners are not afforded an opportunity to be heard in respect of the value of their lands is also untenable. While no hearing is given when the lands are appraised one is accorded when the tax is sought to be enforced. The mode of enforcement is by a suit in a court of justice, when, as the Supreme Court of the State holds, owners aggrieved by the valuation may have a full hearing upon that question. This is due process. *Davidson* v. *New Orleans*, 96 U. S. 97, 104; *Hagar* v. *Reclamation District*, 111 U. S. 701, 711.

*Judgment affirmed.*