BRANSON, SHERIFF AND COLLECTOR OF CRAW-
FORD COUNTY, ET AL. *v.* BUSH, RECEIVER
OF THE ST. LOUIS, IRON MOUNTAIN & SOUTH-
ERN RAILWAY COMPANY.

APPEAL FROM THE CIRCUIT COURT OF APPEALS FOR THE
EIGHTH CIRCUIT.

No. 82. Argued November 14, 1919.—Decided December 22, 1919.

A tax law of Arkansas (Acts 1911, p. 233), providing for the valuation
of all the property of railroad companies, tangible and intangible,
with assessment of buildings and side tracks, as real estate, in the
town or district where located, and of main line, also as real estate, to
be apportioned according to actual mileage in each town or district,
declares that the franchises of such companies, "other than the right
to be a corporation," are property and "shall be considered" in
assessing their property. *Held*, that this does not necessarily im-
port an addition of franchise value, viewed as personal property, to
the assessment of tracks and buildings in a particular district, but
requires these to be assessed at their value as realty but having re-
gard to their use as part of a railroad; and that a special improve-
ment tax, based on an assessment presumably so made, can not
be declared invalid upon the ground of being so unequal, compared
with assessments on other real estate of the district, as to violate
the equal protection clause of the Fourteenth Amendment. P. 185.
A legislative determination that lands will be benefited by a public
improvement for which a special tax is authorized is conclusive, un-
less it is arbitrary and wholly unwarranted. P. 189.
A declaration by a state legislature that real estate of a railroad com-
pany, consisting of main and side tracks and buildings in a road
improvement district, will be benefited by a road improvement,
is not arbitrary or unwarranted where there is reasonable ground
for concluding that the railroad's traffic will thereby be increased.
P. 190.
248 Fed. Rep. 377, reversed.

THE case is stated in the opinion.

*Mr. G. B. Rose,* with whom *Mr. W. E. Hemingway, Mr. D. H. Cantrell* and *Mr. J. F. Loughborough* were on the briefs, for appellants.

*Mr. Thomas B. Pryor,* with whom *Mr. Edward J. White* was on the briefs, for appellee.

MR. JUSTICE CLARKE delivered the opinion of the court.

By act of the General Assembly the State of Arkansas created "Crawford County Road Improvement District No. 2," a body corporate, and prescribed its boundaries. Special and Private Acts of Arkansas, 1911, p. 642.

To pay the cost of the road improvement contemplated the act provided that it should be made a charge upon all of the real property, railroads and tramroads in the district. Bonds were sold and the road completed before this suit was commenced to enjoin the collection of taxes charged against the property of the railway company, of which the appellee hereinafter designated the Company, was receiver. The tax objected to was imposed upon the assessed value of the main track, sidetracks, rolling stock, buildings and material of the Company apportioned to the road district under a state law for the valuation of railroad property, and in the bill it is alleged to be invalid because the assessment conflicts with many provisions of the Constitutions of the United States and of Arkansas. The rate was the same for all real property in the district.

The District Court permanently enjoined the tax to the extent that it was imposed on personal property—the rolling stock and materials of the Company. From this part of the decree no appeal was taken and thereafter all question as to the invalidity of the assessment because including rolling stock and materials disappeared from the case. But, for want of equity, the bill was dismissed so

far as applicable to the real estate "designated in the bill of complaint as main track, side track, and buildings." On appeal by the Company from this part of the decree, the Circuit Court of Appeals reversed the decree of the District Court and enjoined the collection of the tax on the real estate on two grounds:

(1) Because the including of the franchise and other intangible property of the Company in the assessment results in "a higher rate of taxation" on the property of the railway company than on the other property in the district, and

(2) Because the evidence fails to show that the Company would derive any benefit from the improvement of the road.

In this court the appellants, hereinafter referred to as the Road District, assign as errors these two holdings of the Circuit Court of Appeals, and we shall consider them in the order stated.

All property of the railway company in the State was assessed by a State Tax Commission under an act, the validity of which is not assailed, providing:

"The franchises (other than the right to be a corporation) of all railroads . . . are declared to be property for the purpose of taxation and the value of such franchises shall be considered by the assessing officers when assessing the property of such corporations." Acts of Arkansas, 1911, p. 233, § 2.

The act also required the Commission to "determine the total value of the entire property of the corporation, tangible and intangible"; that the buildings and sidetracks should be assessed as real estate in the town or district where located, but that the main track, also to be assessed as real estate, should be apportioned among the several towns and districts through which the road ran according to the "actual mileage in each town and district."

The Circuit Court of Appeals did not hold either the railroad valuation or the district road improvement law unconstitutional, both being types of laws often upheld by this court (*State Railroad Tax Cases*, 92 U. S. 575; *Cleveland, etc., Ry. Co. v. Backus*, 154 U. S. 439, and *Houck v. Little River Drainage District*, 239 U. S. 254), but the first ground of its decision was, only, that the assessment of the main track under the former law, as applied to the case of taxation for benefits provided for by the latter, resulted in unequal taxation to an extent amounting to a denial of the equal protection of the laws.

The court was carried to its conclusion by this process: The act creating the Road District, and the general law applicable to local assessments in proportion to benefits, both required that only real estate should be assessed to pay for the improvement here involved; only the real estate of the other property owners of the District was assessed, and therefore when the franchises, personalty, of the railroad company were "considered" in making the assessment complained of, the Company was taxed a "higher rate," a greater amount, than other property owners and by such discrimination was denied the equal protection of the laws.

It is argued by the Road District that this conclusion is erroneous, for the reasons following:

The assessment law, which we have quoted, provides that the franchises of railroad companies ("other than the right to be a corporation") " shall be considered " by officials when assessing their property.

It is to be noted that this law does not provide for the assessment of the franchises of railroad companies separately as personal, or intangible, property, as the laws of some States require, but only declares that they are "property" which "shall be *considered* by the assessing officers when assessing the property of such corporations" and they are not valued separately in the

assessment complained of, as it is itemized in the bill of complaint.

It is not easy to define just what is meant by the "franchise" of a railroad company "other than the right to be a corporation" and the record does not attempt a definition. *Morgan* v. *Louisiana*, 93 U. S. 217, 223. The record is also silent as to what, if any, value was placed upon the franchises of the Company here involved by the State Tax Commission, and as to what extent, if at all, they were "considered" in arriving at the assessment objected to, and therefore, it is contended, that the conclusion of the Circuit Court of Appeals that personal property value was included in the assessment of the real estate within the District has no foundation on which to rest, other than the assumption that the Tax Commission conformed to the law and "considered" the franchises when assessing the real estate and that this necessarily resulted, in fact, if not in form, in such inclusion—an unusually meager basis surely for invalidating a tax of the familiar character of this before us.

If, however, the distinction sometimes taken between the "essential properties of corporate existence" and the franchises of a corporation (*Memphis & Little Rock R. R. Co.* v. *Railroad Commissioner,* 112 U. S. 609, 619), be considered substantial enough to be of practical value, and if it be assumed that the distinction was applied by the State Commission in making the assessment here involved, this would result, not in adding personal property value to the value of the real estate of the Company in the district, but simply in determining what the value of the real property was—its right of way, tracks and buildings—having regard to the use which it made of it as an instrumentality for earning money in the conduct of railroad operations. This at most is no more than giving to the real property a value greater as a part of a railroad unit and a going concern

than it would have if considered only as a quantity of land, buildings and tracks.

This is the method of assessing railroad property often approved by this court, specifically in *Cleveland, etc., Ry. Co.* v. *Backus,* 154 U. S. 439, 445, saying:

"The rule of property taxation is that the value of the property is the basis of taxation. It does not mean a tax upon the earnings which the property makes, nor for the privilege of using the property, but rests solely upon the value. But the value of property results from the use to which it is put and varies with the profitableness of that use, present and prospective, actual and anticipated. There is no pecuniary value outside of that which results from such use. The amount and profitable character of such use determines the value, and if property is taxed at its actual cash value it is taxed upon something which is created by the uses to which it is put. In the nature of things it is practically impossible—at least in respect to railroad property—to divide its value, and determine how much is caused by one use to which it is put and how much by another."

And long experience has confirmed the statement by Mr. Justice Miller in *State Railroad Tax Cases,* 92 U. S. 575, 608, that: "It may well be doubted whether any better mode of determining the value of that portion of the track within any one county has been devised than to ascertain the value of the whole road, and apportion the value within the county by its relative length to the whole." And see *Kentucky Railroad Tax Cases,* 115 U. S. 321, in which, also, the contention is disposed of that the railroad track should be valued by the same officials and on the same basis of acreage as farm lands adjacent to it.

Thus, the assessment complained of was made under valid laws and in a manner approved and customary in arriving at the value of that part of railroad tracks

situate in a State, county or district. So far as this record shows, the assessment, modified by the part of the decree of the District Court not appealed from, is not a composite of real and personal property values, but is the ascertained value of the real estate—the tracks and buildings—of the Company within the taxing district, enhanced, no doubt, by the special use made of it, but still its value as a part of the railroad unit, resulting from the inherent nature of the business in which it is employed, a value which will not be resolved into its constituent elements for the purpose of defeating contribution to a public improvement. No attempt was made to prove fraudulent, or capricious or arbitrary action on the part of any officials in making the assessment, the only evidence upon the subject being the opinions of four employees of the Company that the improvement of the road would not benefit the railroad property, and if inequality has resulted from the application of the state law in a customary manner to a situation frequently arising in our country, it is an incidental inequality resulting from a valid classification of railroad property for taxation purposes which does not fall within the scope of the Fourteenth Amendment, which "was not intended to compel the State to adopt an iron rule of equal taxation." *Bell's Gap R. R. Co.* v. *Pennsylvania,* 134 U. S. 232, 237. And see *French* v. *Barber Asphalt Paving Co.,* 181 U. S. 324; *Cass Farm Co.* v. *Detroit,* 181 U. S. 396, 398; *Detroit* v. *Parker,* 181 U. S. 399.

Thus, the basis for assuming that the franchises of the railroad company were added as a separate personal property value to the assessment of the real property of the Company becomes, upon this record, much too unsubstantial to justify invalidating the tax involved if it be otherwise valid, and the first assignment of error must therefore be sustained.

But the holding of the Circuit Court of Appeals that

"the evidence fails to show that the railroad company derives any benefit from the road" is also assigned as error.

In the act of the General Assembly creating this Road District it is provided:

"Section 5. It is ascertained and hereby declared that all real property within said district, including railroads and tramroads, will be benefited by the building of the said highway more than the cost thereof as appropriated in the county assessment of each piece of property within the district, for this and the succeeding years, and the cost thereof is made a charge upon such real property superior to all other mortgages and liens except the liens for the ordinary taxes, and for improvement districts heretofore organized; . . ." Special and Private Acts of Arkansas, 1911, 642, 645.

Where, in laws creating districts for local improvements and taxation, there is such a legislative declaration as this, as to what lands within the district will be benefited by the improvement, the law with respect to the extent to which such determination may be reviewed by the courts is so well settled, and has so lately been reëxamined and restated by this court, that extended discussion of the subject is not justified.

In *Spencer* v. *Merchant,* 125 U. S. 345,—a decision often cited and approved—it is decided that if the proposed improvement is one which the State had authority to make and pay for by assessments on property benefited, the legislature, in the exercise of the taxing power, has authority to determine, by the statute imposing the tax, what lands, which might be benefited by the improvement, are in fact benefited by it; and if it does so, its determination is conclusive upon the owners and the courts, and the owners have no right to be heard on the question whether their lands have been benefited or not.

The subject was carefully reëxamined and the law

restated in cases so recent as *Wagner* v. *Baltimore*, 239 U. S. 207, and *Houck* v. *Little River Drainage District*, 239 U. S. 254, with the result that the rule as we have stated it was approved, with the qualification, which was before implied, that the legislative determination can be assailed under the Fourteenth Amendment only where the legislative action is "arbitrary and wholly unwarranted," "a flagrant abuse, and by reason of its arbitrary character is mere confiscation of particular property." And see *Withnell* v. *Ruecking Construction Co.*, 249 U. S. 63, 69; *Hancock* v. *Muskogee*, 250 U. S. 454, 457; *Embree* v. *Kansas City Road District*, 240 U. S. 242, 250.

The decisions relied upon by the Company, *Norwood* v. *Baker*, 172 U. S. 269; *Myles Salt Co.* v. *Iberia Drainage District*, 239 U. S. 478; *Gast Realty Co.* v. *Schneider Granite Co.*, 240 U. S. 55, are not in conflict with the rule but plainly fall within, and are illustrations of, the qualification of it.

An application of this rule to the case before us renders not difficult the decision of the second assignment of error.

The road to be improved was "a little less than three and a half miles in length" and extended from Alma, a considerable village, on the north, southerly to an east and west road which had its western terminus at the City of Van Buren, eight miles west of the junction of the two roads. It was the principal road to and from Alma, the travel on it being greater than on all the other roads which served that village combined. In wet seasons the road was practically impassable for wagons, sometimes for three or four months together. People living south of the east and west road, who made Van Buren their trading point in wet weather, after the road was improved traded exclusively at Alma, it being four and a half miles nearer for many of them. The railway of the appellee was the only

one at Alma, but at Van Buren there was a competing road, with a line two hundred and fifty miles shorter than that of the appellee to St. Louis, the chief market for the staples of the region.

On the question of benefits which would come to the railroad property from the construction of the road, the appellee receiver called four witnesses, three of them engineers and one a superintendent of the Company. Two of these were familiar with the location of the road and the other two testified that they knew of its location in a general way. All four testified in general terms that the road was not and never would be of any benefit to the railroad. It is significant that no traffic man was called and that no evidence was introduced showing the extent of business done at Alma before and after the improvement of the road.

For the District, three witnesses were called, one a doctor, one a merchant and one a long-time resident of the village of Alma. Each of these testified that, in his opinion, the road, by making the village of Alma more accessible, particularly in the wet seasons of the year, and by developing the adjacent country, would increase the business of the railway company and would divert business from Van Buren where there was a competing railroad, to Alma where appellee had the only line. It was in evidence also that after the act was passed, but before the road was completed, a large gas producing district was discovered not far south of the southern terminus of the improved road which was tributary to it.

To this must be added the obvious fact that anything that develops the territory which a railroad serves must necessarily be of benefit to it, and that no agency for such development equals that of good roads.

This discussion of the record makes it clear that it is impossible to characterize as arbitrary, capricious or confiscatory the action of the General Assembly, in de-

claring that the property of the railroad company within the District would be benefited by the construction of the contemplated road improvement, but, on the contrary, it makes it apparent that the case is one so fully within the general rule that the holding of the Circuit Court of Appeals that the railroad would not be benefited by the improvement cannot be sustained.

It results that the decree of the Circuit Court of Appeals must be reversed and that of the District Court affirmed.

*Reversed.*

MR. JUSTICE McREYNOLDS dissents.