No. 22,472.

*In re* Appeal from THE BOARD OF SUPERVISORS OF DRAINAGE
  DISTRICT NO. 1 (THE BOARD OF COUNTY COMMISSIONERS OF
  CHASE COUNTY, *Appellee,* v. DRAINAGE DISTRICT NO. 1 OF
  CHASE COUNTY, *Appellant*).

### SYLLABUS BY THE COURT.

1. DRAINAGE DISTRICT ORGANIZED—*Engineer's Report Filed—Notice that
   Objections to Report by County Commissioners were Overruled—
   Appeal Taken in Time.* A drainage district was organized; the re-
   port of the engineer was filed; and notice was given of the time to
   hear objections to that report. Through the attorney for the board of
   supervisors, the time of the county commissioners to file their ob-
   jections was extended. Negotiations were then commenced to settle
   the differences that existed between the board of supervisors and the
   county commissioners. Finally the board of supervisors notified the
   county commissioners that their objections had been overruled more
   than ten days before. The county commissioners perfected their
   appeal to the district court within ten days after being notified that
   their objections had been overruled. *Held,* that the appeal was within
   time.

2. SAME—*Appeal from Order of Supervisors—Jurisdiction of District
   Court.* On an appeal from an order of the board of supervisors of
   a drainage district overruling objections filed to the report of the
   engineer, the district court has jurisdiction to correct the record of
   the acts of the board of supervisors.

3. SAME—*Trial—Burden of Proof.* A judgment of the district court
   will not be reversed for error in placing the burden of proof, in an
   action tried without a jury, where each of the parties had ample
   opportunity to introduce all his evidence.

4. SAME—*Appeal—Jurisdiction of District Court.* On such an appeal
   as is named in paragraphs 1 and 2 of this syllabus, the district court
   has power to reduce the assessment of benefits and of costs on the
   land affected by the appeal.

Appeal from Chase district court; WILLIAM C. HARRIS,
judge. Opinion filed February 7, 1920. Affirmed.

*E. L. Eaton,* of Bonner Springs, for the appellant.

*F. A. Meckel,* county attorney, *R. M. Hamer,* and *H. E.
Ganse,* both of Emporia, for the appellee.

The opinion of the court was delivered by

MARSHALL, J.: Drainage district No. 1 of Chase county appeals from a judgment of the district court rendered on an appeal by the board of county commissioners from an order of the board of supervisors of the drainage district overruling the objections filed by the board of county commissioners to the engineer's report. The district also appeals from the judgment of the district court reducing the assessment of benefits to the county and costs to be paid by it.

In 1916 a drainage district was organized in Chase county under sections 3992-4031 of the General Statutes of 1915. That district published a notice in Chase county notifying all parties interested in the lands embraced within the district that they might file their objections to the report of the engineer within the time fixed by law, and that such objections would be heard on Monday, November 20, 1916. The attorneys for the board of county commissioners negotiated with the attorney for the drainage district for additional time in which to file their objections. The time therefore was extended, and objections were not filed until November 28, 1916. Thereafter, the board of county commissioners and the supervisors of the drainage district, through their attorneys, negotiated for a settlement of the differences that existed between the two boards. These negotiations continued until January 1, 1917. On December 9, 1916, the supervisors of the drainage district overruled the objections of the board of county commissioners, and adopted and confirmed the report of the engineer, and fixed the assessment of benefits and costs to Chase county, as follows: Total benefits, $5,370; assessment of costs, $2,685. On January 1, 1917, the board of county commissioners and the supervisors of the drainage district were each in session, and an agreement concerning the assessments and benefits was thought to have been reached, but when the attorneys undertook to reduce the agreement to writing, a dispute arose and no agreement was finally made. The attorneys for the board of county commissioners then suggested to the supervisors of the drainage district that the objections of the county commissioners be overruled; that the county commissioners would then appeal to the district court; and that

the matter could there be settled. One of the supervisors then informed the attorneys for the county commissioners that the objections had been overruled on December 9, and that it was too late to take an appeal. The county commissioners had no notice or knowledge of any meeting on December 9. On January 9, they filed their notice of appeal to the district court. In that court the supervisors of the drainage district filed a motion to dismiss the appeal on the ground that it was not taken according to the provisions of the statutes governing the same. The matter urged was that the appeal was not taken in time. The commissioners then filed a pleading which they denominated an answer and cross petition, in which they recited the facts set out, and asked that the board of supervisors of the drainage district be directed to correct their records so as to recite the facts set out in the answer and cross petition. The motion to dismiss the appeal was denied, and the board of supervisors was directed to correct its records. On the trial the district court reduced the assessment of benefits from $5,370 to $1,800, and directed that the costs levied against the county should be decreased in the proportion in which the benefits had been decreased. From these orders the drainage district appeals.

1. One proposition urged by the drainage district is that the district court did not have jurisdiction to hear the appeal because it was not taken in time. Section 4008 of the General Statutes of 1915 provides that an appeal may be taken from the decision of the board of supervisors within ten days after the rendition of the decision. The supervisors contend that the decision overruling the objections of the county commissioners was made on December 9, while the county commissioners argue that because of the conduct of the supervisors no proper decision was rendered until January 1, 1917. This necessitates an examination of the conduct of the board of supervisors through their attorney in extending the time in which to file objections and in negotiating for the adjustment of differences after the objections of the county commissioners had been overruled. Good faith demanded that the board of supervisors should cease their negotiations with the county commissioners after the objections had been overruled, as the county commissioners knew nothing of the order of the supervisors. Good

faith further demanded that the supervisors notify the county commissioners of the order that had been made. Neither of these things was done until January 1, 1917, on which date the supervisors notified the county commissioners that their objections had been overruled. If the county commissioners were deprived of their right to appeal from the order of the supervisors, a premium would be placed on trickery between different departments of public service where nothing but the utmost good faith should prevail.

The county commissioners had a right to file their objections, a right to be heard thereon, and a right to appeal from the order overruling their objections. They cannot be deprived of that right by being misled by the conduct of the supervisors. The appeal was taken within ten days after the county commissioners were notified of the order overruling their objections. It must be held that the appeal was taken in time and that the district court had jurisdiction to hear the same.

2. It is urged that the application for the correction of the record of the action of the supervisors of the drainage district was a collateral attack on the record, and that the record was conclusive. The attack on the record was made in the proceeding of which the record purports to be an official account. When the appeal was taken, the record of the proceedings, so far as the county commissioners were concerned, was transferred to the district court, and that court had jurisdiction of the entire matter the same as the supervisors had before the appeal was taken. The supervisors could have corrected their record and made it tell the whole story. The district court, when it acquired jurisdiction of the matter, had authority to do the same things that the supervisors could have done. The attack was not collateral; it was direct, just as direct as an appeal from a judgment of the district court to the supreme court in an ordinary action. In *Shuster v. Overturf*, 42 Kan. 668, 671, 22 Pac. 718, this language is found:

"If the transcript was incorrect as to the date of the rendition of the judgment, or if it improperly omitted the presentation or approval of the appeal bond, the defendant had an ample remedy. When the motion to dismiss was made, he might have suggested a diminution of the record. The justice could then have been compelled to correct his transcript according to the facts of the case. This was not done." (p. 671.)

In the present case the district court ordered the supervisors of the drainage district to correct their record. This they failed to do. The district court acting within its power, then corrected the record.

3. The drainage district contends that the court erroneously placed the burden of proof on the district. It is argued that this was prejudicial error. It does not appear that the drain-age district failed to introduce all its evidence. This court, in *Gemienhardt v. Ward,* 101 Kan. 250, 167 Pac. 1141, said:

"In a proceeding to review an official survey the burden of proof should be imposed on the party who assails the survey; but when the rival parties have had ample opportunity to present all their evidence, the fact that the trial court imposed that burden on the party seeking to up-hold the survey is not prejudicial error." (Syl. ¶ 1.)

"It does not appear that any prejudice resulted in requiring the de-fendant to take the initiative. Both parties produced all the available evidence; there was no jury; and the trained mind of a trial judge would hardly be led astray by the mere fact that the evidence supporting the survey was presented to him before he heard the evidence assailing it." (p. 251.)

(See, also, *Bank v. Brecheisen,* 98 Kan. 193, 196, 157 Pac. 259; *In re Osborn's Estate,* 99 Kan. 227, 233, 161 Pac. 601; *Hennig v. Gas Co.,* 100 Kan. 255, 164 Pac. 297; *In re Hollo-way's Estate,* 100 Kan. 368, 164 Pac. 298; *Boutross v. Insur-ance Co.,* 100 Kan. 574, 578, 164 Pac. 1069; *Rains v. Weiler,* 101 Kan. 294, 300, 166 Pac. 235.)

4. Another proposition urged is that the court erred in reducing the assessment of benefits to the county and the costs to be paid by it. The court had jurisdiction of the appeal. The appeal was taken for the purpose of determining the bene-fits received by the county and of apportioning to the county its share of the costs of the construction of the improvements. It was the duty of the court to adjudicate both matters on the evidence produced. This the court did. Other than the argu-ment against the jurisdiction of the court, nothing is advanced to show error in rendering the judgment; it is not contended that the judgment was not supported by evidence.

The judgment is affirmed.