## In re CHICAGO, R. I. & P. RY. CO.

District Court, D. Kansas, First Division.
August 20, 1928.

No. 536–N.

Luther Burns and John Dumars, both of Topeka, Kan., for Chicago, R. I. & P. Ry. Co.

A. E. Crane, of Topeka, Kan., for drainage district.

McDERMOTT, District Judge. In 1911 the Legislature of Kansas passed a law providing for the creation of drainage districts, with the usual rights of condemnation and taxation. Section 24—518, R. S. Kan. 1923, provides that "all * * * taxes * * * shall be levied * * * in proportion to the benefits derived. * * *" The next section provides that the district, through its board of directors, shall appoint a benefit and damages commission, whose duty it is "to assess the costs of improvements made against the separate tracts of land and other real property in proportion to the benefits derived therefrom, and to appraise the amount of damages done and the value of lands taken in making such improvements." Section 24—519.

Section 24—520 prescribes the method to be used by the commission in apportioning benefits. It reads:

"In apportioning benefits they shall be divided into two classes: First, general benefits, such as accrue to the district as a whole from the construction of such improvements. The cost of these benefits shall be assessed at an equal rate on the assessed value of all the lands and other real property included within the district. Second, special benefits, those of especial value to lands and other real property lying in the vicinity of such improvements, in addition to the general benefits; and the cost of such special benefits shall be borne by the land and other real property receiving the same, in proportion to said special benefits."

Section 24—523 provides that the commission shall file their report with the board of directors of the district, who shall file a certified copy with the county clerk, and notify each person or corporation interested of the amount of the damages awarded and assessments levied against the property; any person aggrieved may appeal to the board of directors within 20 days from the date of filing.

The next section (24—524) provides that within 30 days from the expiration of the time of filing complaints the board of directors shall fix a time and place for the purpose of hearing the complaints and give notice thereof.

Under this statute, a small drainage district in Jackson county, Kansas, was created, known as Straight Creek drainage district No. 2. Running through this small district is a branch line of the Rock Island Railway, whose right of way occupies 25.3 acres out of the 3,000 acres of the district and is 1.6 miles in length. The benefits commission assessed $14,124.67 as the benefits accruing to the railway company from the project, out of a total estimated cost of $60,000. The railway company filed its notice of complaint and request for a hearing with the county clerk. On the date set for the hearing, the board of directors declined to hear any evidence proffered by the railway company, for the reason that the notice of com-

58

plaint had been filed with the county clerk, instead of with the board of directors. This appeal results.

At the threshold it is contended that this court is without jurisdiction. It is true that the statute does not expressly provide for any appeal from the determination of the district board as to the amount of benefits. However, section 60—3301 of the Revised Statutes of Kansas of 1923 provides that the district court shall have jurisdiction to reverse, vacate, or modify any final order made by "a probate court, a justice of the peace or any other tribunal, board or officer exercising judicial functions, and inferior in jurisdiction to the district court." The Supreme Court of Kansas has expressly held that the district court has power under this statute, to reduce the assessments of benefits upon appeal by a landowner. Chase County v. Drainage Dist., 106 Kan. 315, 187 P. 694. As to the jurisdiction of the federal court, where other elements of removability exist, the decision in Road Imp. District v. St. Louis Railroad Co., 257 U. S. 547, 42 S. Ct. 250, 66 L. Ed. 364, is conclusive. Excepting that a road district was involved, instead of a drainage district, the cases are identical.

Straight Creek was so named because it was so crooked. While normally the volume of water carried by it is insignificant, yet in times of heavy rains the channel was quite unable to carry off the water. The drainage district straightened the creek and enabled it to carry off more water than it had theretofore carried, and much more rapidly. The work was so done that it gets better as the years go by, the constant scouring of the water deepening and widening the channel. At the present time it is still unable to carry off the water in times of very heavy rains, and floods will occasionally result as heretofore. When the surrounding ground is flooded, however, the water recedes much more rapidly than formerly; the flood water leaving the lands now in from 12 to 15 hours, where formerly it took from 2 to 3 days. It will be somewhere between 5 and 15 years before the scouring process is complete, and at that time it will have greatly lessened, if not removed, the occasional floods. The farm land in the drainage district is flat, and it is probably true that all of it is especially benefited approximately the same amount per acre.

The railway bisects this district for a distance of 1.6 miles. It is built on a grade approximately 7 or 8 feet higher than the land on either side, and a steel bridge has been constructed across the creek, with a 90-foot span, which is ample to carry off the water in the channel at any time. The road has been in this district for 40 years, and train service has never been interrupted by floods at this point. Prior to this construction, the backwater, which is without perceptible current, stood to the level of the rails on several occasions, but train service was not interrupted. In 1905, and perhaps in 1909, the water did wash out a part of the fill, which, however, was repaired in a few hours by section men, without the interruption of train service. Since that time the grade has been raised about 6 inches and ballasted, and the flood waters have done no appreciable damage to the railway, excepting as standing water may affect any dirt fill by softening it. The evidence is not at all clear that a fill which has stood for 40 years, and is thoroughly settled, is seriously affected by water without appreciable current. At any rate, the evidence shows that, since the track was ballasted and the grade raised, no expenditure has been made by the railway on account of floods. Whenever the water is high, the section men are sent along the track to examine for evidences of softening, and it is conceivable that an extraordinary flood might so soften the fill that some work might be occasioned in the future. That is, however, speculative, for it is fair to assume that a fill that has stood for 40 years, with but one trifling piece of work necessary, may stand for 40 more. In fact, since the creek was straightened, there has been one overflow, in 1925, which occasioned no damage.

The benefit and damage commission assessed no special benefits to the railway company. In fact, the total of the special benefits assessed is insignificant. Out of the total cost of $60,000, the special benefits assessed are the sum of $2,976.34. The general benefits are assessed at $57,023.66. The general benefits were assessed in accordance with the statute, according to the assessed value of all the lands and other real property included within the district, without regard to proportionate benefits. In arriving at the valuation of the railroad company's right of way, the commission did not take the average value of adjoining lands, approximately $52 per acre, but took the assessed value of the railway company for general taxation, placing a value on its 25 acres of land within the district of $52,508.06, an acreage value approximately 40 times that of the adjoining land. This included rolling stock and other personal property; the district has conceded its error in this respect, and by stipulation the value of the

railway right of way, as improved, excluding personal property and intangibles, is agreed to be $30,000, and the special master has recommended that the assessments be reduced to that valuation.

The railway company contends that no special benefit has accrued to it by reason of the improvement. The benefit and damage commission has found no special benefit accruing to the railway company. The special master, to whom the case was referred, has found that the railway company was benefited by the improvements, without finding whether the benefit was special or general. The master recommended that the assessment stand, reduced as to the value.

The manner by which this assessment was made is not disputed. There was no attempt to ascertain what, if any, benefit accrued to the railway company, nor to the other property in the district, except as to the insignificant sum of about 5 per cent. of the cost. The benefit and damage commission did its work largely in an office; they ascertained the assessed value of all the property in the district and distributed the cost accordingly. Since they found essentially all the benefits to be "general," rather than "special," and since the statute provided that "general" benefits should be generally distributed on an assessed value basis, there was no occasion for the commission to inquire into the particular benefits to each tract of land.

Two questions, then, are presented: First, under this statute, may the cost of an improvement be distributed on an assessed value basis, without regard to the relative benefit derived by various property owners from the improvement? Upon this question, the Kansas decisions, interpreting this or similar statutes, are persuasive, if not controlling. Second, if so, does such a proceeding deprive the appellant of its constitutional rights? And upon this question the federal decisions control.

It may be well to first dispose of some matters urged in the briefs. It is quite true that the assessment as to other landowners cannot be inquired into in this proceeding. But, if the assessment is bad as to appellant, it must be enjoined, even though it disturbs the distribution now made of the cost. It is also quite true that courts do not substitute their judgments for that of administrative tribunals, if such tribunals follow the law and their judgments are honestly and fairly formed. Neither can an assessment so made be set aside because it lacks mathematical precision, for all that can be expected is a fair and reasonably just distribution of the load. It is likewise true that because benefits are indirect and difficult to measure is no reason for ignoring them.

The appellant insists that its property is not benefited at all by this improvement. The drainage board found no special benefits, and neither did the master. The finding of the district board, unappealed from, that there was no special benefit, would seem to end that inquiry, although a reading of the record, and the decided cases, indicates that a finding of some special benefit might have been sustained. There was testimony that water standing for indefinite periods along dirt fills is bound eventually to soften them, and that, if these floods are stopped, the railroad will be saved something by way of inspection. Drainage District v. C. B. & Q. Ry. Co., 96 Neb. 1, 146 N. W. 1055; Chicago & N. W. Ry. Co. v. Board, 171 Iowa, 741, 153 N. W. 110. Moreover, there is the indirect benefit which accrues to any railroad when the community it serves is prosperous. Saving crops for the farmers means additional tonnage for the carrier. Branson v. Bush, 251 U. S. 182, 40 S. Ct. 113, 64 L. Ed. 215.

But the record also leaves no doubt but what the benefits to the railroad are small compared with the benefits to the adjoining farms. An actual and immediate value inures to these farms, the moment the floods are stopped. If one crop in four is saved, the productivity and value of a farm has been increased 25 per cent. That is quite a different thing from saving a few hours' work in repairing a hole in a fill once in 40 years. The cost of this improvement was about 25 per cent. of the assessed value of all the land in the district, and it may have increased the value of the farm lands to that extent. But no one can fairly say that it increased the value of the railroad's property 25 per cent., or anything like that amount. The drainage board did not say that, but resorted to the fiction of general benefits. The report of the commission clearly shows that it made no effort to assess the benefits accruing to each piece of land. Why they assessed any "special" benefits is not clear, unless it was to render lip service to the statute.

It was the duty of the benefit and damage commission to ascertain the particular benefit which accrued to each farm in this district by reason of this improvement, and the special benefit, if any, accruing to the railway by reason of this improvement. It is entirely manifest that this was not done.

For example, one of the farms was assessed a special benefit of $90 and a general benefit of $1,400; another one, a special benefit of $150 and a general benefit of $2,065. One or two farms were assessed a general benefit and no special benefit, and, as has been indicated, a general benefit was assessed against the railroad company of more than $14,000 and no special benefit. The work of the benefit and damage commission indicates one of two things, either that the law was entirely misconceived, or, being unable to fairly assess any special benefits to the railway company, it desired to impose a large proportion of this cost upon that company, by the device of calling what are in fact special benefits by the name of general benefits.

In my opinion, when the drainage board assessed practically all of the cost on an assessed value basis, without any regard to the benefits derived by particular property, they departed entirely from the statutory plan. The whole statute is predicated upon the theory of special benefits. Elaborate provision for assessments of benefits, notices thereof, and hearings thereon, are provided for, none of which would be necessary in case the load was to be distributed according to assessed value alone, as was done here. Sections 24—518 and 24—519 seem too clear for misunderstanding. They provide that "taxes * * * shall be levied * * * in proportion to the benefits derived," and that it shall be the duty of the commission "to assess the costs of improvements made against the separate tracts of land * * * in proportion to the benefits derived therefrom."

There was no attempt to comply with either section. There was no proportioning of benefits, excepting as to a negligible per cent. On the contrary, and in direct opposition to the whole scheme of the statute, no proportioning of benefits was undertaken, but the cost was distributed on another basis altogether. It is true that section 24—520 provides for assessing certain general benefits upon assessed valuation. That section has not been construed, and its construction now is not necessary; if it should be construed to mean that the cost of an improvement of this kind can be distributed without regard to benefit, its constitutionality would be in serious question; but, whatever it means, that part of the section cannot be resorted to for the purpose of nullifying all the rest of the statute, and of changing the statute from one of taxation for special benefits to one of general taxation without reference to benefits. If the commission had undertaken to follow the statute, they certainly would have discovered the manifest impossibility of saying, as a matter of fact, that the railroad's property was benefited in either the same way or to the same extent as overflowed farm lands.

The Supreme Court of Kansas has not construed this particular statute, but it has had before it cases involving the assessment of railroads under other benefit statutes, and its decisions leave little room for doubt as to the question here involved. In Railway Co. v. Anderson County, 120 Kan. 240, 243 P. 282, the benefit commissioners used the assessed valuation method, instead of actually determining the benefits, and in that respect the case is analogous to the case at bar, although in Anderson county the commissioners placed the railroad property in the zone of lowest benefits. Nevertheless the Kansas court enjoined the assessment, saying:

"The assessment of benefits against plaintiff's property appear to have been made, largely, upon the basis of its valuation for the purpose of general taxation fixed by the state tax commission. There was no independent investigation by the commissioners to ascertain a basis for proper valuation, no examination or inspection of the properties such as examination of rails and roadbed, listing of buildings, bridges, culverts, measurement of cuts or fills, etc., and no exercise of independent judgment by them upon the facts which were ascertained. The tax rolls of farm property as returned by the assessor and the report of the tax commission as applied to railroads, exclusive of rolling stock and material were adopted and used as a basis for assessment of benefits. This was not a correct method. The tax commission fixes its valuations of railway property by taking into consideration, not only the physical right of way and track, but various other intangibles, including stocks and bonds owned by the company, its connection with other roads, its earning capacity, its value as a railway property, and other items reported to it. The value is placed upon the property as a whole and apportioned on a mileage basis through the taxing districts which it traverses. It will readily be seen that the commissioners in the instant case were in error in merely adopting the value fixed by the tax commission with its rolling stock and materials excluded."

In Railway Co. v. Mitchell County, 110 Kan. 582, 204 P. 729, benefits were assessed against a railroad of $57 an acre, and on adjoining land of about $4 an acre. This was held to be discriminatory, and the tax en-

joined. It will be observed that the disproportion in the present case is 40 times, rather than 15 times, as in the cited case.

In Railroad Co. v. Jefferson County, 114 Kan. 156, 217 P. 315, the court quoted with approval from Railway Co. v. Imp. Dist., 256 U. S. 658, 41 S. Ct. 604, 65 L. Ed. 1151, as follows:

"In Kansas City So. Ry. v. Road Imp. Dist. No. 6, 256 U. S. 658 [41 S. Ct. 604] 65 L. Ed. 1151, the special assessment was held invalid because of manifest oppression and injustice. The court said: 'The settled general rule is that a state Legislature "may create taxing districts to meet the expense of local improvements, and may fix the basis of taxation without encountering the 14th Amendment unless its action is palpably arbitrary or a plain abuse." * * * Classification, of course, is permissible, but we can find no adequate reason for what has been attempted in the present case. * * * Railroad property may not be burdened for local improvements upon a basis so wholly different from that used for ascertaining the contribution demanded of individual owners as necessarily to produce manifest inequality. Equal protection of the law must be extended to all.' "

Bearing in mind that the Legislature did not create this district, nor determine that this appellant was benefited, and that the commission ascertained no special benefits, but distributed the cost on the basis of assessed value alone, the following quotations from the Kansas decisions are pertinent:

"The fundamental fact upon which the validity of special assessments rests is an increment of benefit to the property taxed resulting from the improvement, and the property owner must at some stage of the proceedings have notice and opportunity to be heard, or the equivalent of such notice and opportunity, before a special assessment can become a valid charge against him. Gilmore, County Clerk, v. Hentig, 33 Kan. 156, 5 P. 781." Railroad Co. v. Abilene, 78 Kan. 826, 98 P. 227.

"The real property and improvements thereon within the district held by the plaintiff must bear its proportion of the burden. The burden, however, must be imposed upon all who are directly benefited in the ratio of the benefits. * * * The assessment, being made in the ratio of accruing benefits, requires that it should be imposed equally upon all the property equally benefited. * * * The ratio of benefits cannot always be determined with mathematical precision, but the assessment should be made as nearly equal as possible. This is ordinarily done by the commissioners upon actual view of the property and the placing of an appraisal value thereon as determined by its quality for the purpose for which it is used. * * * The principle on which the district was established was that its territory was specially benefited. Proper assessments are made on that assumption. It is called a benefit district. All in it have a common interest. Governed by equitable rules, the real property and improvements thereon should equally bear the burden of the improvement." Railroad Co. v. Labette Co., 113 Kan. 426, 215 P. 447.

The district did not follow the statute in making this assessment against the property of appellant, and it cannot stand.

"The basis fixed by the act on which assessments were to be made is that of benefits. The commissioners were empowered to ascertain the amount of benefits which in their judgment would accrue to each tract on account of the improvement, and then lay the assessments accordingly. They derived their powers from the act, and in making assessments were restrained to proceed as the act directs. They were not at liberty to use some other basis or adopt some other method of ascertainment of benefits and assessments." Missouri Pac. R. Co. v. Road Imp. Dist., etc. (C. C. A.) 288 F. 504.

Coming now to the constitutional question presented. While the statute provides for notice and hearing, yet, as the assessment was made in this case, notice and hearing could be of no avail. When the commission determined to charge 95 per cent. of the cost of this work to general benefits, it denied the right of any hearing as to 95 per cent. of the cost, for the statute provides that general benefits shall be assessed according to assessed value; and, of course, if the benefits are to be spread in that way, a hearing would be useless. Passing for determination upon some other occasion the question of whether some slight "general" benefits may be assessed according to assessed value, it seems that when 95 per cent. of the cost is assessed in a manner that makes a hearing futile, the action is void under the decision of the Supreme Court in Browning v. Hooper, 269 U. S. 396, 46 S. Ct. 141, 70 L. Ed. 330. In that case it was held that, where the Legislature did not create the district, an assessment was void that was levied without a hearing. The court said:

"Here, on the initiation of individuals signing the petition, a special district was carved out to furnish credit and to pay for

specified improvements on designated roads wholly within the territory selected. The purpose was special, and the district will cease to exist as a body corporate upon the payment of the bond debt. It is clear that the burdens here sought to be imposed on appellants' lands are special assessments for local improvements. Embree v. Kansas City Road District, 240 U. S. 242, 247 [36 S. Ct. 317, 60 L. Ed. 624]; Illinois Central Railroad v. Decatur, 147 U. S. 190, 197, 209 [13 S. Ct. 293, 37 L. Ed. 132]. * * * Where a local improvement territory is selected, and the burden is spread by the Legislature or by a municipality to which the state has granted full legislative powers over the subject, the owners of property in the district have no constitutional right to be heard on the question of benefits. Valley Farms Co. v. Westchester [County] supra [261 U. S. 155, 43 S. Ct. 261, 67 L. Ed. 585]; Hancock v. Muskogee, 250 U. S. 454, 459 [39 S. Ct. 528, 63 L. Ed. 1081]; Withnell v. Construction Co., 249 U. S. 63, 69 [39 S. Ct. 200, 63 L. Ed. 479]; Wight v. Police Jury [C. C. A.] 264 F. 705. But it is essential to due process of law that such owners be given notice and opportunity to be heard on that question where, as here, the district was not created by the Legislature, and there has been no legislative determination that their property will be benefited by the local improvement. Appellants were denied all opportunity to be heard. No officer or tribunal was empowered by the law of the State to hear them, or to consider and determine whether the road improvements in question would benefit their lands. The act is repugnant to the due process clause of the Fourteenth Amendment. Embree v. Kansas City Road District, supra, 240 U. S. 251 [36 S. Ct. 317]."

But, passing all other questions, and assuming that this assessment had been made for a special benefit, as the statute requires, could it stand under the Constitution and the decisions of the United States courts? The law is clear, the question being one of fact. ■ An assessment made by a commission created by statute will not be set aside, unless its action is palpably arbitrary, or a plain abuse of power. K. C. Ry. v. Road District, 266 U. S. 379, 45 S. Ct. 136, 69 L. Ed. 335; Houck v. Little River Drainage Dist., 239 U. S. 254, 36 S. Ct. 58, 60 L. Ed. 266.

■ The record here discloses that to the 25 acres of railroad right of way, approximately 1/120 of the total acreage of the district, has been apportioned one-seventh of the cost;

that the benefit to the railroad property was slight in proportion to the benefit to adjoining land, and that the proportion assessed the company far exceeded any possible benefits derivable by it from the project. Such assessment cannot stand.

In Thomas v. Railway Co., 261 U. S. 481, 43 S. Ct. 440, 67 L. Ed. 758, the directors laid assessments for a drainage project according to assessed value, as the statute prescribed. The court held the assessment to be grossly discriminatory and void. The language of the opinion fits the facts in the case at bar:

"The total length of track within the district, including a detour line and sidings, is 3.61 miles. The railroad is owned by the Texarkana & Ft. Smith, and is operated by the Kansas City Southern, as part of its line from Missouri to the Gulf. The railroad property is 40.43 acres in area, and is assessed at $69,910. It would derive no direct benefit from the construction of the ditches and embankment designed to drain and to protect the district from overflow, because the tracks are laid upon a fill or dump (with the exception of one trestle) and are above flood level. The railroad would derive some measure of indirect benefit, because the drained land would doubtless be cultivated, and more extensive cultivation would probably increase traffic over the line. The tax laid imposes upon the railroad, which can receive no direct or immediate benefit, a very heavy burden, and the lands which will receive a large direct (and possibly immediate) benefit are required to bear only a very small part of the burden."

In K. C. Ry. Co. v. Road Improvement District, 256 U. S. 658, 41 S. Ct. 604, 65 L. Ed. 1151, a benefit board assessed benefits to a railroad company of about $7,000 a mile (less than the original assessment here). The court held the assessment discriminatory, saying:

"The assessors made estimates as to farm lands and town lots according to area and position and wholly without regard to their value, improvements thereon, or their present or prospective use. On the other hand, disregarding both area and position, they undertook to estimate benefits to the property of plaintiffs in error without disclosing any basis therefor, but apparently according to some vague speculation as to present worth and possible future increased receipts from freight and passengers which would enhance its value, considered as a component part of the system. Obviously, the railroad companies have not been treated like individ-

ual owners, and we think the discrimination so palpable and arbitrary as to amount to a denial of the equal protection of the law. Benefits from local improvements must be estimated upon contiguous property according to some standard which will probably produce approximately correct general results. To say that 9.7 miles of railroad in a purely farming section, treated as an aliquot part of the whole system, will receive benefits amounting to $67,900 from the construction of 11.2 miles of gravel road seems wholly improbable, if not impossible. Classification, of course, is permissible, but we can find no adequate reason for what has been attempted in the present case. Royster Guano Co. v. Virginia, 253 U. S. 412, 415 [40 S. Ct. 560, 64 L. Ed. 989]. It is doubtful whether any very substantial appreciation in value of the railroad property within the district will result from the improvements, and very clearly it cannot be taxed upon some fanciful view of future earnings and distributed values, while all other property is assessed solely according to area and position. Railroad property may not be burdened for local improvements upon a basis so wholly different from that used for ascertaining the contribution demanded of individual owners as necessarily to produce manifest inequality. Equal protection of the law must be extended to all."

In Mo. Pac. Ry. Co. v. Road Imp. Dist., 288 F. 502 (8th C. C. A.), a benefit commission assessed benefits according to assessed values, as was done here. The assessment was held void, the court saying:

"On this it seems clear that the assessed valuation for general taxation could under no condition be considered a fair basis and safe guide for an equitable and just distribution of these special assessments. The basis used by the commissioners was not only not permissible under the act, it was also arbitrary, inequitable and grossly unjust. This conclusion is forcibly demonstrated in another way. Appellant's right of way within the district on which its main track, side tracks and buildings are located contains about 500 acres. The benefits assessed against it, figured on this basis, would be a little more than $200 per acre. The uncontradicted proof discloses that farm lands lying along its right of way are assessed total benefits of $2.40 per acre. It is no answer to this unjust and unequal distribution of burdens to say that the farm lands were assessed a benefit of 24 per cent. of their assessed value ($10 per acre) for general taxation, while appellant's property was only assessed an average of less than 10 per cent. of its assessed value. This resulted in burdening appellant's property for the improvement more than eighty times as much as that placed on farm lands, when the two classes of property are considered as acreage. The result, we think, demonstrates that the action of the commissioners was 'palpably arbitrary and a plain abuse,' and violative of the Fourteenth Amendment."

An able review of the law, and an analysis of pertinent facts, may be found in K. C. Southern Ry. Co. v. May, 2 F.(2d) 680 (8th C. C. A.). The assessment is discriminatory and arbitrary, under the decisions cited, and violative of the constitutional rights of appellant.

The exceptions to the report of the master will be sustained, and a decree entered enjoining the assessment made; costs will be taxed against the drainage district.

It is so ordered.