KANSAS CITY SOUTHERN RAILWAY COMPANY ET AL. *v.* ROAD IMPROVEMENT DISTRICT NO. 3 OF SEVIER COUNTY, ARKANSAS, ET AL.

ERROR TO THE SUPREME COURT OF THE STATE OF ARKANSAS.

No. 33. Argued May 1, 1924.—Decided December 15, 1924.

1. An act of a state legislature, consistent with the state constitution, requiring that the cost of a public road improvement be distributed over private lands according to the benefits they will respectively receive from it, and determining what lands will be so benefited and in what amounts, cannot be said to offend the due process of law clause of the Fourteenth Amendment unless the determina-

tion is palpably arbitrary, and therefore a plain abuse of power. P. 386.

2. And only where there is manifest and unreasonable discrimination in fixing the benefits which the several parcels will receive can the legislative determination be said to contravene the equal protection clause of the Amendment. *Id.*

3. To justify an assessment of benefits to particular lands it is not essential that the benefits be direct or immediate, but it is essential that they have a better basis than mere speculation or conjecture. P. 387.

4. In the case of railway property, the benefits may consist of gains from increased traffic reasonably expected to result from the improvement. *Id.*

5. A special act confirming existing assessments and recognized by the Supreme Court of the State as a legislative determination of the lands which will be benefited by the improvement and of the proportions in which they will share in the benefits, must be treated by this Court as an admissible legislative assessment of benefits so far as the state constitution is concerned. *Id.*

156 Ark. 116, affirmed.

ERROR to a judgment of the Supreme Court of Arkansas which affirmed a judgment sustaining a special road improvement assessment made against property of the plaintiff in error railroad company. A petition for certiorari was also made here, which the Court denied.

*Mr. Samuel W. Moore,* with whom *Mr. Frank H. Moore, Mr. Arthur F. Smith* and *Mr. James B. McDonough* were on the briefs, for plaintiffs in error.

*Mr. Hal L. Norwood,* for defendants in error, submitted. *Mr. E. K. Edwards, Mr. J. I. Alley* and *Mr. B. E. Isbell* were also on the brief.

MR. JUSTICE VAN DEVANTER delivered the opinion of the Court.

This case presents a controversy over the constitutional validity of an assessment of benefits accruing to railway property from the improvement of a public road in Sevier County, Arkansas.

The road reaches from DeQueen, the county seat, to the eastern border of the county, eighteen miles. It had been a mere dirt road, not good in any season and impassable at times. The improvement consisted in reducing objectionable curves and grades, installing modern bridges and culverts, reconstructing the roadbed, putting on a hard and durable surface and generally fitting the road for economical and expeditious rural travel and transportation. To accomplish the improvement a road district covering approximately three miles of territory on either side of the road was created under a general law of the State, §§ 5399 *et seq.*, Crawford & Moses Digest, 1921. Money to pay the cost of the improvement, estimated at $200,000, was to be obtained primarily through an issue of interest bearing bonds and ultimately through a special tax spread over a period of twenty years. The tax was to be laid on all lands, town lots, railroads and other real property within the district in the proportions in which they would be benefited by the improvement. Assessors appointed by the county court were to assess the benefits and to set forth in their report the name of the owner of each parcel, a description of the property, its "present assessed value" for general taxing purposes, and the amount of benefits assessed to it. When completed the assessment was to be filed in the county court, a time for hearing parties in interest was to be fixed and public notice thereof was to be given. The court was to review the work of the assessors and to equalize, lower or raise the assessment of benefits to particular parcels as justice might require. An appeal could be taken to the circuit court, which was to give a hearing *de novo* in respect of such objections as were set forth in the affidavit for appeal; and a further appeal could be taken to the Supreme Court of the State. A comprehensive statement of the various steps to be taken in the proceedings and of their nature is given in *Commissioners, etc.* v. *St. Louis Southwestern Ry. Co.*, 257 U. S. 547.

Within the road district, at DeQueen, are two miles of main track, nine miles of side tracks, a depot and other buildings, which form part of a railway line, called the Kansas City Southern, which extends from Kansas City, Missouri, to Port Arthur, Texas. The assessed value for general taxing purposes of this railway property within the district was $129,615. The district assessors assessed it with benefits amounting to $21,270, or approximately 16 per cent. of its assessed value. The assessed value of the farm lands and town lots within the district for general taxing purposes was $897,660. The district assessors assessed them with benefits amounting to $448,354, or approximately 54 per cent. of their assessed value. Other property in the district, not requiring special notice here, was assessed with benefits amounting to $40,409. Thus the aggregate of the benefits assessed was $510,033. The special tax amounted to 70 per cent. of the benefits assessed, or 3½ per cent. per annum for twenty years—the full tax being intended to cover the bond issue with interest. The portion of the tax laid on the railway property was $14,899, or $744.45 per annum.

In regular course the assessment was reviewed by the county court and confirmed, the court finding that the lands and other real property in the district would be " greatly benefited " by the improvement and that the assessment of benefits was " fair, just and equal to all land owners."

Two companies interested in the railway property appealed to the circuit court and in the affidavit for appeal assailed the assessment, in so far as it affected them, on the grounds, first, that it was purely arbitrary, and therefore in contravention of the due process of law clause of the Fourteenth Amendment to the Constitution of the United States, because the railway property neither would nor could receive any benefit from the improvement of the road; secondly, that it was not in accord with the equal

protection clause of that Amendment, because the railway property on the one hand and the farm lands and town lots on the other were assessed with benefits in grossly unequal proportions, to the detriment of the railway property, and, thirdly, that it was made in disregard of the commerce clause of the Constitution of the United States, because the benefits assessed to the railway property were not such as would or could accrue to that property, but were such as would acrue, if accruing at all, to the interstate business in which that property was being used, and therefore could not be made the basis of a special improvement tax without burdening interstate commerce.

While the appeal was pending in the circuit court the state legislature passed a special act (No. 98, approved February 7, 1920) recognizing the creation and boundaries of the district, approving the plans for the improvement of the road, confirming the assessment of benefits as sustained by the county court and declaring that the assessment " fairly represents the benefits that will accrue " to the railway property and other tracts in the district. The companies then took the position that the legislative confirmation was open to the same constitutional objections that were made to the original assessment.

A hearing was had in the circuit court at which the companies assumed the burden of establishing that their objections were well founded in so far as they turned on matters of fact. Much evidence was produced on both sides. The greater part was addressed to the question whether the railway property within the district would receive any substantial benefit from the improvement. The witnesses differed pronouncedly. Some expressed positive opinions on the subject without advancing anything of substance in support of their opinions. This was true to a greater degree of the witnesses for the companies than of those for the district. Some of the latter referred

to and detailed conditions and transactions tending to give their opinions strong support. Among other things, they testified that theretofore the lands in the vicinity of the road had necessarily been put to uses which made only a light contribution to the tonnage and business of the railway; that the lands were naturally well adapted to other uses, such as growing fruits and vegetables, but could not profitably be used for these purposes in the absence of road facilities for getting the products to places of shipment expeditiously and without injury from jolting; that when plans for the improvement of the road were adopted fruit growing and truck farming began to displace the prior uses; that at the time of the hearing, which was after one-half of the road was completed and the rest graded, the new crops were being grown and sent to distant markets in large and increasing quantities; that these products were hauled over the new road in motor trucks to DeQueen and Locksburg, those taken to Locksburg being then forwarded over a short local railroad to DeQueen; that all were there shipped over the railway— the one in question—to Kansas City and other points beyond, and that there was no other railway leading to available markets. The same witnesses further testified that the change from the old to the new uses was still progressing; that other lands tributary to the new road and not cultivated before were being prepared for cultivation, and that timber and other heavy products which could not reach the railway before were being hauled over the new road and shipped out in substantial volume. On the question of discrimination the evidence was meagre. The assessed value of the railway property for general taxing purposes was conceded to be about one-half its actual value. On the basis of assessed values, that property was assessed with a much lower proportion of the total benefits than the farm lands and town lots were, the proportional relation being that of 16 to 54. There was some

evidence of instances in which the assessed value of farm lands and town lots for general taxing purposes was less than one-half their real value, but there was no evidence that this was general. Even in the instances named the benefits assessed were generally much in excess of 16 per cent. of one-half the real value. There was no evidence of an intentional over assessment of benefits to the railway property or of an intentional under assessment to the farm lands and town lots. The three assessors testified that they assessed all the property in the same way—according to the benefits which in their judgment the particular parcels would receive from the improvement of the road.

The circuit court was of opinion on all the evidence that the improvement would bring to the railway a very substantial increase in tonnage and business at DeQueen; that this would enlarge its receipts and net revenue and thereby materially benefit its property at DeQueen, and that the assessment of benefits to that property was neither arbitrary nor unreasonably discriminatory but just and fair. On that determination of the issues of fact the court entered a judgment overruling the objections and upholding the assessment. The companies appealed to the Supreme Court of the State and it affirmed the judgment, 156 Ark. 116. That court put its decision on two grounds taken collectively—one that the special confirmatory act constituted a legislative determination of the correctness of the assessment, which could not be overturned unless found to be obviously arbitrary or unreasonably discriminatory, and the other that there was ample evidence to sustain the findings of the circuit court, which negatived the existence of any such error, and that the circuit court's solution of the conflicts in the evidence was not open to review on appeal.

The companies brought the case here on writ of error and afterwards presented a petition for certiorari, consid-

eration of which was passed to the hearing on the writ of error. As the constitutional validity of the special confirmatory act was directly challenged in the state courts and sustained by them, the case is properly here on the writ of error; so the petition for certiorari will be denied.

The objection based on the commerce clause of the Constitution has been abandoned, but those based on the due process of law and equal protection clauses of the Fourteenth Amendment are pressed on our attention.

By a long line of decisions in this Court it has been settled that, where the state constitution as construed by the state court of last resort does not provide otherwise, the legislature of a State may require that the cost of a local public improvement, such as the construction or reconstruction of a public road, be distributed over the lands particularly benefited and charged against them according to their value, their area or the benefits which they will receive; may itself determine what lands will be benefited and in what proportions they will share in the benefits, and may avail itself, for the purposes of that determination, of any information which it deems appropriate and sufficient, including such as may be afforded by reports and estimates made in prior assessment proceedings having the same object. Only where the legislative determination is palpably arbitrary, and therefore a plain abuse of power, can it be said to offend the due process of law clause of the Fourteenth Amendment. *Spencer* v. *Merchant*, 125 U. S. 345, 355–357; *French* v. *Barber Asphalt Paving Co.*, 181 U. S. 324, 338, *et seq.; Houck* v. *Little River Drainage District*, 239 U. S. 254, 262, 265; *Myles Salt Co.* v. *Iberia Drainage District*, 239 U. S. 478, 481; *Branson* v. *Bush*, 251 U. S. 182, 189; *Valley Farms Co.* v. *County of Westchester*, 261 U. S. 155, 163. And only where there is manifest and unreasonable discrimination in fixing the benefits which the several parcels will receive can the legislative determination be said to con-

travene the equal protection clause of that Amendment. *Kansas City Southern Ry. Co. v. Road Improvement District No. 6*, 256 U. S. 658; *Thomas v. Kansas City Southern Ry. Co.*, 261 U. S. 481.

To justify an assessment of benefits to particular lands it is not essential that the benefits be direct or immediate, *Valley Farms Co. v. County of Westchester, supra;* but it is essential that they have a better basis than mere speculation or conjecture. *Kansas City Southern Ry. Co. v. Road Improvement District No. 6, supra.* In the case of railway property they may consist of gains from increased traffic reasonably expected to result from the improvement. *Thomas v. Kansas City Southern Ry. Co., supra; Branson v. Bush, supra.*

The special confirmatory act was recognized by the Supreme Court of the State as a legislative determination of the lands which will be benefited and of the proportions in which they will share in the benefits. It therefore must be treated here as an admissible legislative assessment of benefits so far as the state constitution is concerned.

The evidence, as before outlined, falls short of showing that the assessment against the railway property was either palpably arbitrary or unreasonably discriminatory. The burden was on the railway companies to overcome the presumption attending the legislative determination, and this they failed to do; for, under the evidence produced, it is an entirely admissible view that the railway property will be substantially benefited by the road improvement and that the benefits are fairly assessed as between that property and the farm lands and town lots. True, the amount of benefits which will accrue to the railway property is largely a matter of forecast and estimate; but the same thing is true of the farm lands and town lots, and also of benefit assessments in general. See *Louisville & Nashville R. R. Co. v. Barber Asphalt Paving Co.*, 197 U. S. 430, 433; *Butters v. Oakland*, 263 U. S. 162,

165. Forecast and estimate based on a solid premise of fact and experience are not to be confused with mere speculation and conjecture.

The road in question extends, at right angles to the railway line, a distance of 18 miles into a country well adapted to supplying large traffic for the railway when the improvement is completed. Adjacent to the road, as is conceded in the brief for the railway companies, are 1587 tracts of farm lands of less than 80 acres and 246 tracts of a larger acreage. The only practicable route to available markets is through DeQueen and over the railway. These facts, together with the affirmative evidence of what was undertaken and done in the way of growing new crops and shipping them out over the railway as soon as the improvement was well under way, illustrate that there was a real basis for assessing the railway property at DeQueen with substantial benefits. Had the companies recognized this and devoted themselves to showing that the amount of benefits assessed to their property was excessive instead of attempting to show that it would receive no benefits whatever, they possibly might have made a better case. But that course was not taken; and necessarily the state courts rested their decision on the evidence that was presented. That evidence fairly admitted of the view, taken in those courts, that the assessment was not excessive.

The companies make a contention which may be summarized as follows: Assume that the improvement will bring to the railway, at DeQueen, an increased tonnage and business yielding gross receipts amounting to $10,000 a year. According to the evidence one-fourth of that sum, or $2,500, will be net revenue. This increase in net revenue must be spread over the entire railway, which is 800 miles long. The portion assignable to the two miles of main line within the road district is $6.25. This sum capitalized on a six per cent. basis, which gives $104.16,

represents the full benefit to the railway property within the district.

The contention is faulty in several respects. The increased traffic will not be carried from one end of the railway to the other, but only from DeQueen to Kansas City. The railway property within the district includes much more than the two miles of main track. Doubtless, the increased traffic will in a way benefit the railway as a whole; but the traffic will be appurtenant to the portion of the railway at DeQueen, and will specially enhance the importance and value of the property there as a part of the line.

Other contentions are advanced which need not be specially noticed here, because they are shown to be quite untenable in the decisions before cited.

We conclude that the objections made to the assessment on constitutional grounds are not well taken.

*Judgment affirmed.*