## CONNOR v. BOARD OF COM'RS OF LOGAN COUNTY, OHIO.

(District Court, S. D. Ohio, E. D. April 16, 1926.)

No. 418.

1. Courts ⬄101—Suit to enjoin county commissioners from proceeding to establish sewerage district and construct system held not one for presentation to statutory court of three judges under provisions of Judicial Code (Jud. Code, § 266 [U. S. Comp. St. § 1243]; Gen. Code Ohio, §§ 6602—1 to 6602—33).

Suit to enjoin county commissioners from proceeding to establish sewerage district and construct sewer system under provisions of Gen. Code Ohio, §§ 6602—1 to 6602—33, held not one for consideration by statutory court of three judges under Judicial Code, § 266 (U. S. Comp. St. § 1243); language of that section relating to interlocutory injunctions restraining enforcement of order of administrative board or commission being applicable only to state and not local boards or commissions.

2. Courts ⬄282(3)—Suit to enjoin county commissioners from proceeding with establishment of sewerage district under state statute, on ground that acts taken and threatened violated due process and equal protection clauses held within jurisdiction of federal court, where jurisdictional amount was alleged (Gen. Code Ohio, §§ 6602—1 to 6602—33; Const. U. S. Amend. 14).

Suit to enjoin county commissioners from establishing sewerage district and constructing system under Gen. Code Ohio, §§ 6602—1 to 6602—33, on ground that actions taken and threatened by defendants violated due process and equal protection clauses of Const. U. S. Amend. 14, held properly within jurisdiction of federal court; the bill alleging a jurisdictional amount involved.

3. Constitutional law ⬄229(3), 290(3)—Injunction ⬄136(2)—Property owner within proposed sewerage district held entitled to preliminary injunction in suit to enjoin establishment of district; failure to provide for hearing or opportunity to object to assessment of benefits before completion of improvement being denial of due process and equal protection of law (Gen. Code Ohio, §§ 6602—1 to 6602—33; Const. U. S. Amend. 14).

In view of failure of Gen. Code Ohio, §§ 6602—1 to 6602—33, authorizing county commissioners to establish sewerage districts and construct sewer system, to provide any opportunity for property owner to object to apportionment of assessment before completion of improvement, and in view of his inability then to raise question whether aggregate of benefits is less than total assessments, taxpayer held entitled to preliminary injunction in suit to restrain county commissioners from proceeding further in establishment of district and construction of system as being in violation of due process and equal protection clauses of Const. U. S. Amend. 14.

**4. Constitutional law ⊜290(3)—Due process requires that property owners have notice and opportunity to be heard on question of benefits from formation and establishment of improvement district by an inferior tribunal exercising only administrative or quasi judicial authority, where there has been no legislative determination of benefits.**

Due process requires that property owners have notice and opportunity to be heard on question of benefits from formation and establishment of improvement district by an inferior tribunal exercising only administrative or quasi judicial authority, where there has been no legislative determination of benefits.

**5. Constitutional law ⊜283.**

The taking of private property to pay for a public improvement must be reasonable under circumstances of the particular case.

**6. Constitutional law ⊜38—A legislative enactment, generally constitutional, may in special set of facts operate unconstitutionally.**

A legislative enactment may be generally constitutional, and yet, when applied in a given situation or to a particular set of facts and circumstances, operate in an unconstitutional manner.

**7. Injunction ⊜76—Suit to enjoin county commissioners from proceeding to award and execute contract for construction of sewer system, on theory of denial of due process and equal protection of law, held not premature or out of order because of remedy at law (Gen. Code Ohio, §§ 6602—1 to 6602—33).**

Property owner's suit to enjoin county commissioners, acting under Gen. Code Ohio, §§ 6602—1 to 6602—33, from awarding and executing contract for construction of sewer system and proceeding further in establishing sewerage district, *held* not premature or out of order because of adequate remedy at law.

In Equity. Suit by Corah T. Connor against the Board of County Commissioners of Logan County, Ohio. On motion of plaintiff for temporary injunction, and on motion of defendant to discharge temporary restraining order, and to dismiss petition for want of jurisdiction of subject-matter. Motion to dismiss for want of jurisdiction denied, and motion for temporary injunction granted.

Miller & Middleton and Forrest G. Long, all of Bellefontaine, Ohio, for plaintiff.

E. H. & W. B. Turner, of Dayton, Ohio, and West & Campbell and Elmer L. Goodwin, all of Bellefontaine, Ohio, for defendant.

Before DONAHUE, Circuit Judge, and HICKENLOOPER and HOUGH, District Judges.

PER CURIAM. This cause came on to be heard upon the motion of the plaintiff for a temporary injunction and the motion of the defendant to discharge the temporary restraining order heretofore issued herein, and to dismiss the petition, for the reason that the court has no jurisdiction of the subject-matter of the action.

The petition prays for a temporary and permanent injunction restraining the board of county commissioners of Logan county, Ohio, from proceeding with the establishment of a sewerage district, the construction of the sewer system in and for such district, and the assessment of the cost of such construction upon the real estate comprising such district, all under the provisions to section 6602—1 to 6602—33 of the General Code of Ohio, and is in violation of article 14 of the Amendments to the Constitution of the United States. Answer was filed by the defendants, and the questions of constitutionality of the state law were argued at some length, although sufficient evidence was not introduced to permit of final determination upon the merits.

[1] The first question of major importance, presented to the consideration of the statutory court of three judges sitting as under the provisions of section 266 of the Judicial Code (Comp. St. § 1243), is whether the case properly falls within the provisions of this section, or whether it may properly be submitted to and decided by the judge of the District Court sitting alone. The construction of section 266 of the Judicial Code, and the scope of its application to the orders or official acts of administrative officers, boards, or commissions, created by state statutes, to whom limited legislative or administrative powers were delegated for a portion of the state only, was so recently considered and defined in the case of Connecting Gas Co. v. Imes (D. C.) 11 F. (2d) 191, decided February 20, 1926 (Southern District of Ohio, Eastern Division), that it seems unnecessary to examine and announce again the principles there stated. In effect, the decision in that case limited the application of section 266 of the Judicial Code to those actions in which an order of injunction was sought to restrain the action of an officer of the state or of a state board or commission, in either case affecting the state at large as distinguished from a territorial or political subdivision of the state. The application of the language of section 266, that "no interlocutory injunction suspending or restraining the enforcement, operation, or execution of any statute of a state by restraining the action of any officer of such state in the enforcement or execution of such statute, or in the enforcement or execution of an order made by an administrative board or commission acting under and pursuant to the statutes of such state," was limited to the orders made by "state" administrative boards or

commissions as distinguished from local boards or commissions.

The question whether the instant case is one which should be decided by a court of three judges is therefore dependent upon a determination whether the board of county commissioners of Logan county, in the establishment of the sewer district and the construction of its sewer system, including local assessments for the payment of the cost, acted as a board of county commissioners or as a state board to which had been delegated the powers with respect to this specific improvement. The court is of the opinion that in the exercise of the powers granted by sections 6602-1 to 6602-33 of the General Code of Ohio the board of county commissioners was acting in its capacity as a board of county commissioners and not as a state board or commission. This opinion is founded upon the fact that the statutes in question do not purport to create a state board or independent sewer commissions, but by their express terms only delegate to boards of county commissioners, then existing, the additional powers incident to supplying sewer systems to rural communities. In the exercise of these powers the county commissioners are authorized to act, and do act, as a board of county commissioners, although the statute grants additional compensation for services thus rendered. This compensation is paid either from the county treasury or by the assessment, but in any event is not paid from the state treasury. The county commissioners are recognized as local officers by the state Constitution, and the board of county commissioners is a local board with quasi corporate powers. The law in effect authorized the board of county commissioners to create an "assessment district" as distinguished from a separate political subdivision. In so doing, the court is of the opinion that this statute merely enlarges its power, but that the local character of the board is unchanged. It is therefore unnecessary in this action to consider what results would follow the creation of a commission, of designated personnel, for the construction of a public improvement within a district defined by the law, such as the Miami Conservancy District, drainage districts, and the like. Whether such commissions are to be considered as state bodies or purely local in character, and whether section 266 of the Judicial Code is to be considered as applicable to them, are questions which the court consider it unnecessary here to decide.

The court being of the opinion that this cause does not fall within the provisions of section 266 of the Judicial Code, it is inappropriate that the two judges who have been called to the assistance of the District Judge to hear and determine the application for injunction should further participate in such hearing and determination. These judges will therefore withdrew from the cause and permit the District Judge alone to determine the question involved.

HOUGH, District Judge. [2] The jurisdictional question raised by defendant's motion for dismissal is not difficult of solution. The proper allegations as to the amount involved appears in the bill of complaint. The bill contains a claim, supported by appropriate allegations, that the actions taken by the defendants, and threatened to be taken, violate the "due process" and "equal protection" clauses of the Fourteenth Amendment to the Constitution of the United States. Unless it is ascertainable that such allegations fail to contain merit or substance, the jurisdiction of the federal court attaches for the purpose of deciding this as well as all other questions raised by the allegations of the bill. Bacon v. Rutland Ry. Co., 232 U. S. 134, 34 S. Ct. 283, 58 L. Ed. 538; Chicago Ry. Co. v. Risty et al. (D. C.) 282 F. 364; C. & N. W. Ry. Co. v. Eveland (D. C.) 285 F. 425; Fallbrook Irrigation Dist. v. Bradley, 164 U. S. 112, 17 S. Ct. 56, 41 L. Ed. 369. The same question was also passed upon in the case of City Ry. Co. v. Beard, Treasurer, 283 F. 313, by this court.

Defendant's motion to discharge the temporary restraining order and dismiss the petition is therefore overruled.

[3] There is presented, then, the question as to whether or not the complainant, under the averments of his bill and the proof submitted, is entitled to the remedy of injunction. The act of the Legislature under which the sanitary sewer improvement is being constructed is found in section 6602—1 et seq., and provides that, for the purpose of preserving and promoting the public health and welfare, the boards of county commissioners of the several counties of this state may by resolution, lay out, establish, and maintain one or more sewer districts within their respective counties, and may construct, maintain, and operate, main and branch sewers within any such district, together with sewage treatment and disposal works, as may be necessary in order to dispose of the sewage or surface water of the district. Then appear provisions for the appointment of engineers and other assistants, to prepare plans and specifications for the enterprise.

With the consent of the legislative body

of an incorporated municipality, evidenced by appropriate resolutions, as in this case, municipalities within any sewer district so established may be placed under the jurisdiction of the county commissioners for the purposes of the improvement. The engineers are given authority under the act, to enter upon private property for the purpose of making surveys and examinations. The credit of the county may be pledged in raising funds to pay for the preliminary expenses of the improvement. After the establishment of such a district, general plans of sewerage and sewage disposal may be prepared and approved by the commissioners, which said plans must also be approved by the state board of health, under the provisions of section 6596, General Code. The commissioners may cause to have prepared detailed plans, specifications, and estimates of cost of the system under consideration. Thereafter the board shall adopt a resolution declaring that such improvement, describing the same and the location, route, and termini thereof, is necessary for the preservation and promotion of public health and welfare, referring to the plans, specifications, and estimates of cost, stating the place where they are on file and may be examined, the estimated cost of maintenance of such improvement for one year, what part of the cost will be paid by the county at large and what part will be specially assessed against the benefited property within the sewer district. (The proceedings for the improvement under consideration in this case provide for the assessment of the entire cost of the project against the benefited property within the sewer district.)

"Such resolution shall  *  *  *  contain a description of the boundaries of that part of the sewer district to be assessed. The board of county commissioners shall cause such resolution to be published once a week for two consecutive weeks in a newspaper published and of general circulation within the county." Gen. Code Ohio, § 6602—2.

When ten days have expired after the completion of such publication, the commissioners shall determine whether they will proceed with the improvement, and pass a resolution to that effect, and further decide whether bonds shall be issued in anticipation of the collection of special assessments, or that money in the county treasury, unappropriated for any other purpose, be appropriated to pay for the improvement. Further, it is provided that, for the purpose of paying a part of the whole of the construction, maintenance, repair, or operation, the board may borrow money for that purpose, again pledging the credit of the county therefor, or may issue bonds of the county, not exceeding the estimated cost of the improvement, plus 10 per cent., etc.

After the adoption of the resolution for the issuance of bonds, and after advertisement, authority is given the commissioners to contract for the construction of the improvement.

In the construction of a main branch or intercepting sewer or sewers, and such treatment or disposal works, the property immediately abutting upon such main branch or intercepting sewer shall be assessed for local drainage, and the balance of the cost and expense of such improvement to be paid by assessments shall be assessed as a district assessment upon all the property, including the abutting property within said district, proportionately and in accordance with the special benefits conferred.

Upon completion of any such improvement, the actual cost thereof shall be ascertained, to which shall be added interest, and the sum so arising shall be assessed against the lots and land within such district found to be benefited by such improvement. Then the estimated assessment shall be made by the engineer, and the commissioners shall cause notice to be published once a week for two consecutive weeks, that such assessment has been made and is on file; the notice to contain a description of the lots within the district to be assessed, and to designate a time and place to be fixed when the commissioners will hear objections to the apportionment. A hearing shall be had and authority is given to amend the estimated assessment, and thereupon the commissioners shall approve and confirm the same, which action will be final and conclusive.

The county commissioners of Logan county, under the provisions of this act as above summarized, have passed the preliminary legislation, adopted plans and specifications which have been approved by the state board of health, except that the approval of the state board of health prohibits the discharge in the sewer system of surface drainage, roof water, overflow from cisterns, and subsoil drainage, and further prohibits the discharge of sewage into storm sewers.

The board of county commissioners passed various resolutions causing the preparation of plans and specifications and estimates of cost of the improvement, and on the 19th day of August, 1925, passed a resolution determining definitely the boundaries of the Indian Lake sanitary sewer district, and on the 29th day of September, 1925, passed a fur-

ther resolution describing the lands within the sanitary sewer district, found it necessary to construct a sanitary sewer system in the district, and resolved that "the entire cost of said improvement shall be specially assessed against the benefited property within said district," and that all the district shall be assessed for the cost of said improvement; the boundaries thereof being described in the resolution. This resolution was published in the county newspaper for a period of two weeks.

The district described by metes and bounds, and shown by the maps and plats made a part of the record, discloses a district to be composed of Indian Lake, a body of water covering a majority of the area of the bounded district, several small islands in the lake, and a strip of land around the edges of the lake. This strip or boundary of land around the lake includes one village, the village of Lakeview, another community which is a summer resort, known as Russell's Point, which is more or less densely populated during the summer season, and within the area of which have been erected summer cottages, amusement halls, and parks. The land in this area belongs to the state of Ohio, and has been leased to the summer inhabitants of the resort. The remaining strip of land around the lake, included within the sanitary sewer district, is largely made up of farms.

The awarding and execution of the contract which is sought to be enjoined is based upon an estimate of cost for the first unit of the construction of substantially $600,000. The other units of the plan—that is, the water system and sewage disposal plant—are estimated to add another million dollars of cost to the project.

The acreage of the strip of land around and contiguous to the lake, included in the boundaries of the district, and excluding the incorporated village of Lakeview, is about 3,000 acres. It has been determined by the commissioners to assess all the land within the created district for the improvement, according to the benefits. This, according to the terms used in the resolution, would include the land covered by water, to wit, the lake and the land upon which is erected the improvements—resort and summer cottage property, both of which is state property.

The act under which the improvement proceedings is brought grants no right or authority to assess state property, nor does there exist other legislative authority clothing the board of county commissioners with the right and power to lay an assessment against state property. It is manifest that the sanitary sewer would substantially benefit the lands within the village of Lakeview and the lands at Russell's Point.

No claim is made that the county commissioners have proceeded unlawfully under the authority given to it by the act of the Legislature, so that the inquiry resolves itself into ascertaining whether the act of the Legislature, under which the improvement proceedings were had, contravenes the "due process" clause of the Fourteenth Amendment of the Constitution of the United States, or whether or not the action of the board of county commissioners, in so far as taken, and the necessary future action to be taken in regular conformity to the provisions of the act, under the facts appearing and the situation and circumstances apparent in respect to the created sanitary district, will work an unconstitutional, unreasonable, and confiscatory result to the land of the complainant, and those similarly situated.

It is claimed on the part of the defendants, that the county commissioners act as a legislative body of a political subdivision under this act of the Legislature, and that the requirements of notice and hearing upon the legislative action of the board is not a requirement necessary to meet the guarantee of the Fourteenth Amendment to the United States Constitution. Reliance under this contention is placed on the case of Spencer v. Merchant, 125 U. S. 345, 8 S. Ct. 921, 31 L. Ed. 763, and the line of cases following and approving the principle therein discussed. The principle laid down in that case is stated as follows: "If the Legislature of a state, in the exercise of its power of taxation, directs the expense of laying out, grading, or repairing a street to be assessed upon the owners of lands benefited thereby, and determines the whole amount of the tax, and what lands, which might be so benefited, are in fact benefited, and provides for notice to and hearing of each owner, at some stage of the proceedings, upon the question what proportion of the tax shall be assessed upon his land; there is no taking of his property without due process of law."

The same rule is announced in the case of Hancock v. City of Muskogee, 250 U. S. 454, 39 S. Ct. 528, 63 L. Ed. 1081; Wight v. Police Jury (C. C. A.) 264 F. 705; Withnell v. Construction Co., 249 U. S. 63, 39 S. Ct. 200, 63 L. Ed. 479; Valley Farms Co. v. Westchester County, 261 U. S. 155, 43 S. Ct. 261, 67 L. Ed. 585; and other cases.

The instant case cannot be classified to come within this principle. The Legislature did not create the district, and therefore did

not designate what property should be assessed; the legislative fiat being that assessments shall be laid "as a district assessment, upon all the property * * * within said district proportionately."

The location of the district being placed within the discretion of the commissioners, the designation of the specific land subject to assessment is therefore also placed to the judgment of the commissioners.

The instant case more properly comes under that class of cases involving the principle announced in Browning v. Hooper, 46 S. Ct. 141, 70 L. Ed. —— (decided January 4th, 1926). This case dealt with a road improvement and the creation of a tax or assessment district. The court say:

"The fact that the metes and bounds describing the road district happened to coincide with the external boundaries of two adjoining commissioners' precincts does not support the contention that the road district was created by the Legislature. For the election of commissioners, each county is divided into four precincts from each of which a commissioner is elected. These precincts are not defined by the Legislature, but by the commissioners' courts. * * * The Legislature may make assessments for local improvements ratably on the basis of property valuation. * * * But, where the amount to be raised is determined and the property to be assessed is selected as in this case, the requirement that the burden shall be so spread is not a legislative assessment."

[4] Although due process of law does not require the owners of property to be assessed for an improvement such as this shall be notified in advance of the formation and bounds of the improvement district, when it is established by the Legislature directly or by a municipality to which full legislative power over the subject has been delegated by the state, yet the case is different when the district is established by a board of other inferior tribunal, exercising only administrative or quasi judicial authority. Hancock v. City of Muskogee, 250 U. S. 454, 39 S. Ct. 528, 63 L. Ed. 1081. And in cases where the Legislature itself creates the district and provides that the cost shall be apportioned against the lots in the district in proportion to the area, there is no occasion for a hearing with respect to the method or mode of apportionment. These are all questions of legislative discretion, subject to judicial relief only in cases of abuse. Hancock v. City of Muskogee, 250 U. S. 454, 39 S. Ct. 528, 63 L. Ed. 1081.

Again it is said that the necessity or expediency of taking property for public use are legislative questions, on which the owner is not entitled to a hearing, so far as the due process guaranty is concerned. Bragg v. Weaver, 251 U. S. 57, 40 S. Ct. 62, 64 L. Ed. 135.

"Whenever by the laws of a state, or by state authority, a tax, assessment, servitude, or other burden is imposed upon property for the public use, * * * and those laws provide for a mode of confirming or contesting the charge thus imposed in the ordinary courts of justice, with such notice to the person, or such proceeding in regard to the property as is appropriate to the nature of the case, the judgment in such proceedings cannot be said to deprive the owner of his property without due process of law, however obnoxious it may be to other objections." Davidson v. New Orleans, 96 U. S. 104, 24 L. Ed. 616; Hagar v. District, 111 U. S. 701, 708, 4 S. Ct. 663, 28 L. Ed. 569; Lent v. Tillson, 140 U. S. 316, 325, 11 S. Ct. 825, 35 L. Ed. 419; Fallbrook District v. Bradley, 164 U. S. 112, 170, 17 S. Ct. 56, 41 L. Ed. 369; Spencer v. Merchant, 125 U. S. 345, 8 S. Ct. 921, 31 L. Ed. 763; C., B. & Q. R. Co. v. Chicago, 166 U. S. 226, 17 S. Ct. 581, 41 L. Ed. 979; Ballard v. Hunter, 204 U. S. 241, 255, 27 S. Ct. 261, 51 L. Ed. 461; Londoner v. Denver, 210 U. S. 373, 28 S. Ct. 708, 52 L. Ed. 1103.

A very recent decision of the Supreme Court pertaining to the requirements of the due process clause in respect to legislative improvements is the case of Hetrick v. Village, 265 U. S. 384, 44 S. Ct. 486, 68 L. Ed. 1065. This case arose in the state of Ohio, and the court deals with the law of the Ohio Legislature. It is held that the requirements of the due process clause are met when the law affords the property owner of a municipal corporation opportunity to determine all questions in reference to the validity, fairness, and amount of the assessment in the state courts. The legislative power is delegated to municipal corporations both by the state Legislature and the Constitution of Ohio. The general law of Ohio (section 12075, General Code) provides:

"Common pleas and superior courts may enjoin the illegal levy or collection of taxes and assessments, and entertain actions to recover them back when collected. * * * * "

In this class of cases, calling for the execution of the definite will of the Legislature, it has been held that notice to the property owner is sufficient if given by publication.

"Where * * * the statute prescribes the court in which, and the time at which the various steps in the collection proceedings

shall be taken, notice by publication to all parties interested to appear and defend is suitable and one that sufficiently answers the demand of due process of law." Winona & St. Peter Land Co. v. Minnesota, 159 U. S. 526, 537, 16 S. Ct. 83, 40 L. Ed. 247; State Railroad Tax Cases, 92 U. S. 575, 609, 23 L. Ed. 663; Hagar v. District, 111 U. S. 701, 710, 4 S. Ct. 663, 28 L. Ed. 569; Lent v. Tillson, 140 U. S. 316, 328, 11 S. Ct. 825, 35 L. Ed. 419; Johnson v. Peterson (C. C. A.) 288 F. 735, 739; Cleneay v. Norwood (C. C.) 137 F. 962, 965.

[5] But the taking of private property to pay a portion of the cost of a public improvement under the circumstances of the particular case must be reasonable. In the case of Davidson v. New Orleans, supra, Mr. Justice Bradley said:

"In judging what is 'due process of law,' respect must be had to the cause and object of the taking, whether under the taxing power, the power of eminent domain, or the power of assessment for local improvements, or none of these; and, if found to be suitable or admissible in the special case, it will be adjudged to be 'due process of law'; but, if found to be arbitrary, oppressive, and unjust, it may be declared to be not 'due process of law.' "

And again, in the case of Withnell v. Construction Co., 249 U. S. 63 on page 71, 39 S. Ct. 200, 202 (63 L. Ed. 479), Justice Day says:

"The attack upon constitutional grounds because of the system which the charter authorized in making the assessment can only succeed if it has produced results * * * palpably arbitrary or grossly unequal." Gast Realty & Investment Co. v. Granite Co., 240 U. S. 55, 36 S. Ct. 255, 60 L. Ed. 526.

An act of the state Legislature, requiring the assessment of lands for a public road, cannot be said to offend the due process clause, unless it operates palpably arbitrary. Kansas City Southern Railway Co. v. Road District, 266 U. S. 379, 45 S. Ct. 136, 69 L. Ed. 335.

The view of this court in classifying the case at bar outside the class that might be termed "legislative improvements" renders it unnecessary to determine whether complainant's position should be upheld on the ground that the act is arbitrary and unreasonable operation of the act.

Referring again to the case of Browning v. Hooper, 46 S. Ct. 141, 70 L. Ed. —— (decided January 4, 1926), the language used by Mr. Justice Butler in the opinion is particularly forceful and applicable to the case at bar:

"But it is essential to due process of law that such owners be given notice and opportunity to be heard on that question [benefits] where, as here, the district was not created by the Legislature, and there has been no legislative determination that their property will be benefited by the local improvement. Appellants were denied all opportunity to be heard. No officer or tribunal was empowered by the law of the state to hear them, or to consider and determine whether the road improvements in question would benefit their lands. The act is repugnant to the due process clause of the Fourteenth Amendment." Embree v. Road District, 240 U. S. 242, 247, 36 S. Ct. 317, 60 L. Ed. 624; Hancock v. City of Muskogee, 250 U. S. 454, 39 S. Ct. 528, 63 L. Ed. 1081.

[6] But notwithstanding the rather compelling language used in the last above quotation, it is believed to be neither necessary or wise, at this juncture, to pass upon the constitutionality of the act. A legislative enactment may sometimes, with propriety, be considered generally constitutional, supply the essentials to meet constitutional requirements, be generally operative without doing violence to the Constitution or infringing its provisions, and the same act, when applied to a given situation and a special operation under a particular set of facts and circumstances, will operate in unconstitutional manner and to an unconstitutional result. Village of Terrace Park v. Errett (6th C. C. A. decided April 6, 1926) 12 F.(2d) 240.

The county commissioners have invaded complainant's 25 acres of farm land to make surveys, have created a sewer district to include those lands, have pledged the credit of the county to pay the preliminary costs of the project, have later published for two weeks a resolution of necessity, describing complainant's lands and describing the boundaries of the sewer district theretofore created, which is all that is apparently required under the provisions of the act.

No personal notice has been given or required to be given, no published notice directed to complainant or others by name, and, after publication, no opportunity given for a hearing, nor does the law require any to be given, nor is a hearing provided for in the law; and, if the contract should be awarded, bonds are required to be issued, pledging the credit of the county for their redemption and to cover the costs of the improvement, and all the property within the created district is

required to be assessed according to benefits, whereas a majority of the land is covered by water, and could not be assessed on the theory of benefit, and for the further reason that there is no authority to assess state land, which latter reason applies also to the area covered by Russell's Point Resort, probably the territory which would receive the greatest proportionate benefit. Moreover, under the requirements of the act, the aggregate benefits accruing to all the property in the created district must arbitrarily be determined to at least equal the entire cost of the improvement. This requirement operates as a quasi judicial determination, depending upon no investigation or calculation of benefits, but solely and simply upon the mathematical determination of how much the entire bill of costs of the improvement aggregates.

After the improvement is finally completed, and not until that time, after the bonds to pay the aggregate bill have been issued, the county incumbranced to redeem the bonds, the sanitary sewer installed, perhaps accessible to complainant's farm, but with a limitation that it shall in no wise be used for surface drainage, then complainant, and not until then, after being notified by publication that the assessment lists are on file, is given an opportunity to object to the apportionment of the assessment. He may prove, if possible, that his land is assessed too high in proportion to the assessment on other land within the district, but he is not at liberty to raise the question that the aggregate benefits to all the lands within the district, and assessed, is less than the total amount of the assessments, which must be at least the total cost of the improvement.

That right has been foreclosed to him under the law of the state of Ohio ever since the decision of the Supreme Court in the case of Chamberlain v. Cleveland, 34 Ohio St. 551, in which the court laid down this rule:

"Where the city council determines that the amount of the assessment does not exceed the value of the benefits specially conferred, its judgment in the premises, in the absence of fraud, is final and conclusive. * * *" Hibben v. Smith, 191 U. S. 310, 24 S. Ct. 88, 48 L. Ed. 195.

Under such a state of facts, the view obtains that there is a presumption that the county commissioners will continue to prosecute the improvement as contemplated and required under the act, and that thereby the complainant will have waived certain of his constitutional rights, and will be placed at great disadvantage in raising fairly questions to which he is entitled, and that he has stated facts in his complaint indicating that threatened injury was imminent.

[7] For that reason, this suit is not prematurely begun, nor is it out of order because of an adequate remedy of law. Risty et al. v. Railway Cos., 46 S. Ct. 236, 70 L. Ed. —— (decided March 1, 1926).

The facts before the court point with great emphasis to the conclusion that complainant's farm land cannot receive the benefit that it will necessarily have to bear if the improvement should proceed to its final consummation. Browning v. Hooper, 46 S. Ct. 141, 70 L. Ed. —— (decided January 4, 1926).

The motion for the allowance of a preliminary injunction is sustained, and a preliminary injunction allowed as prayed. Bond $5,000.