THE VILLAGE OF BENSENVILLE, Appellee, *vs.* THE CHICAGO, MILWAUKEE AND ST. PAUL RAILWAY COMPANY, Appellant.

*Opinion filed February 17, 1925—Rehearing denied April 11, 1925.*

1. SPECIAL ASSESSMENTS—*when railroad property is not benefited by village water system.* Railroad property cannot be benefited by a water system in a village where the property in question is occupied by the company's yards and roundhouse and is used for handling engines and trains and is fully protected, both ordinarily and for emergencies, by the company's own water supply system, which has a capacity five times that of the city system, as the situation of the company in such case is not the same as that of a citizen who has a sufficient well and pump on his own lot.

2. SAME—*benefits cannot be based on conjecture.* Benefits for which an assessment is levied must be actual, real benefits and not based on conjecture, and nothing should be allowed for remote, unappreciable or imaginable benefits which may or may not occur in the future.

3. SAME—*when a railroad right of way should not be assessed for benefits as private property.* Conditions justifying the assessment of benefits against a railroad right of way for a water system are unusual, and a water system assessment against railroad property consisting of station grounds and a strip of ground used as a driveway and for hitching teams, should not be more per lineal foot than is assessed against private property.

APPEAL from the County Court of DuPage county; the Hon. S. L. RATHJE, Judge, presiding.

CHARLES W. HADLEY, and CARL S. JEFFERSON, (O. W. DYNES, of counsel,) for appellant.

MICHAEL KROSS, Village Attorney, (ALBEN F. BATES, of counsel,) for appellee.

Mr. JUSTICE FARMER delivered the opinion of the court:

This appeal is prosecuted by the Chicago, Milwaukee and St. Paul Railway Company from a judgment of the county court of DuPage county confirming a special assess-

ment levied against its property by the village of Bensenville for a water system in said village.

The property of appellant assessed is used exclusively for railroad purposes. It is part of appellant's extensive yards in the village, consisting of 115 miles of track and about 1100 acres of land. None of the property is used for other than railroad purposes, with buildings and other accessories required for railroad purposes. The parts of the property assessed for the improvement are designated as tracts A, B, C, D, E and F. Tract A (76 acres) lies immediately south of appellant's main tracks, and its east boundary is the east line of the village. It is proposed to lay a six-inch water main in the street south of this tract for a distance of approximately 800 feet. Tract B contains 6.63 acres, is vacant and held for yard expansion. The assessment against that tract was reduced to zero and need not be further referred to. Tracts C, D and E are narrow strips immediately south of appellant's main tracks and west of tract A. Those tracts do not abut on the improvement. Tract F is the station and depot grounds.

The substance of appellant's objections was, that the premises are used exclusively for railroad purposes; that its water supply for all purposes is adequate; that the proposed improvement would be of no benefit whatever to appellant's premises and would not increase their value for railroad purposes; that the ordinance is unreasonable and void; also that the depot grounds were assessed more than they were benefited and more than their proportionate share of the costs of the work.

Tract A is occupied by the appellant's yards and main tracks, and embraces the yards used, in connection with the roundhouse, for handling, coaling and cleaning engines. Appellant's water supply system consists of wells, water tank, reservoir, pipe lines, fire hose and hydrants and plant for treating the water to remove the lime. These are only

316—23

parts of the equipment on that tract. Tracts C, D and E are used principally for the extensive handling of trains.

Appellant, at a cost of between two and three millions of dollars, has provided an adequate and efficient water supply for all purposes, including fire protection, and claims that the proposed improvement will be of no benefit whatever, and that the ordinance is arbitrary, unjust and oppressive. The proof shows that appellant's minimum requirement for water each twenty-four hours is about 700,000 gallons and its maximum requirement 1,000,000 gallons. To provide this large amount of water appellant sank on tract A five wells 2200 feet deep, each having a capacity of 200,000 gallons per day. In each well there is what is called a deep well double-stroke pump, driven by a separate thirty-horse-power motor. The current for the motors is manufactured in the power house of appellant, where there are two generators and two engines. Pressure pumps are located in the boiler and washout plant and engine room. A reservoir has been constructed having a capacity of 100,000 gallons, also a 200,000 gallon steel water tank 48 feet high. The water mains are mainly twelve-inch. Fire hydrants, and hose houses with fire hose in them, are distributed over the grounds and an organization of employees maintained for fire fighting. These are only some of the equipment described to provide water, and the proof shows that it works efficiently. It is not denied that appellant's water supply is adequate and that the equipment is of a permanent nature.

The property could only be assessed to pay the cost of the improvement if it were benefited for use for the purpose to which it was devoted. "Where land is restricted to a special use, such as railroad right of way, the measure of benefits which it may receive from a local improvement is the increased value of the property for such special use. [Authorities.] The test is whether the right of way of the railroad property will be benefited in its market value for the use to which it is being put and not its probable future

use." (*City of Chicago* v. *Chicago and Northwestern Railway Co.* 278 Ill. 86.)   The rule has been stated in a great number of cases, among which are *City of Chicago* v. *Rose Hill Cemetery Co.* 285 Ill. 567, *Johnston City* v. *Chicago and Eastern Illinois Railroad Co.* 289 id. 407, and *City of Chicago* v. *Chicago City Railway Co.* 302 id. 57.   Eight witnesses, including appellant's engineers and men of special technical knowledge, testified in detail as to the adequacy and efficiency of appellant's water supply and that the improvement would be of no benefit whatever.

Appellee offered no evidence on the legal objections. After the court overruled them the hearing on the objections as to benefits was before the court, the parties having waived a jury.   J. R. Gray testified for appellee that he is the engineer who designed the improvement for appellee.   The scheme of improvement was to sink a well for the water supply.   At the time of the trial it had been sunk 551 feet.   The witness said he expected to find water in limestone at a depth of 810 feet, and that the capacity of the well he expected to be 250 gallons per minute, which would be 180,000 per day of twenty-four hours.   The witness said he had had some experience with regard to the amount of water consumed by railroads in yards and had had charge of plants which furnished railroads water.   He testified an accident might happen to appellant's water supply, in which event it would be of great benefit to have a duplicate supply.

The only testimony for appellee that the improvement would be of any benefit to appellant's property was, in case of failure of its water supply it would be of benefit to have water the village could supply.   Appellant's requirement for water was more than twice the capacity of the city plant, and the probability of it ever being called upon to furnish water for appellant is too extremely remote to support the ordinance.   Appellant's water supply had approximately five times the capacity of appellee's proposed improvement.   It

was so arranged in separate units that the failure of one to work would not affect the others. Pressure pumps were also installed, so that if all the other pumps ceased to work water could still be supplied. Water stored in the tanks and reservoir would be supplied by gravity. In fact, unusual precautions had been taken to provide against a failure, from any cause, of the water supply. The village proposed to furnish only one well, and a storage tank having a capacity of 75,000 gallons. It seems the benefits of the improvement to appellant's property are so imaginary and highly improbable that the ordinance for the assessment of benefits to tracts A, C, D and E is clearly unreasonable, unjust, oppressive and void. It seems absurd to say appellant's position is the same as that of any citizen of the village who has a well and a pump on his own lot sufficient to supply his needs for use. (*City of Belleville* v. *Mitchell*, 273 Ill. 136; *Hawes* v. *City of Chicago*, 158 id. 653; *City of Kankakee* v. *Illinois Central Railroad Co.* 257 id. 298; *Village of Elmwood Park* v. *Mills & Sons*, 311 id. 136.) Benefits must be actual, real benefits, and not based on conjecture. Nothing should be allowed for remote or unappreciable benefits which the imagination may conjure up and which may or may not occur in the future. *City of Lincoln* v. *Chicago and Alton Railroad Co.* 262 Ill. 11; *Cache River Drainage District* v. *Chicago and Eastern Illinois Railroad Co.* 255 id. 398; *Illinois Central Railroad Co.* v. *Roskemmer*, 264 id. 103.

Tract F is appellant's station grounds. The right of way where it is located is 100 feet wide. Immediately south of the right of way is a strip of land 35 feet wide, belonging to appellant, which is used as a driveway and for hitching teams for public convenience. As we understand the situation, the 135 feet fronting the street was assessed $276.65, or $2.04 per front foot. The attorney for appellee testified all property was assessed $1.78 per front foot, and appellee's witness Root testified the cost of the pro-

posed improvement was spread on a basis of $1.78 a run-
ning foot.   There may be conditions justifying the assess-
ment of benefits against a railroad right of way but they
are rather unusual.   (*City of Lincoln* v. *Chicago and Alton
Railroad Co. supra; City of Chicago* v. *Chicago and North-
western Railway Co. supra; Johnston City* v. *Chicago and
Eastern Illinois Railroad Co. supra.*)   It seems improbable
that the entire 135 feet should have been assessed for bene-
fits or that the benefits to that property would have been
as much as to private property.

The judgment is reversed, and as to tracts A, C, D and
E the case will not be remanded but as to tract F the cause
will be remanded.
                                *Reversed and remanded.*