In the Matter of the Application of the SYRACUSE, BINGHAMTON AND NEW YORK RAILROAD COMPANY and Another, Petitioners, for a Certiorari Order against CHARLES VAN AMBURGH, JR., Supervisor of the Town of Fenton, and Others, Respondents.

Third Department, May 3, 1928.

Towns — water districts — General District Law (Laws of 1926, chap. 470) applied — town board, after hearing, declared that petitioners' railroad right of way would be benefited by water district — determination of town board may be reviewed by certiorari (Gen. Dist. Law, § 7; Civ. Prac. Act, § 1284) — it cannot be said as matter of law that petitioners will not receive benefit — as matter of fact, petitioners will receive direct benefit to property through fire protection, and indirect benefit through protection of industrial plants adjoining railroad within water district.

The town board of the town of Fenton, Broome county, undertook to organize a water district within certain specified boundaries. A portion of the right of way of a railroad of the petitioners was included within the district. At a public hearing the petitioners objected to the inclusion of their right of way on the ground that their property would not be benefited by the proposed water district. (Gen. Dist. Law [Laws of 1926, chap. 470], § 4.)

It appears that the railroad property within the district has a length of one and fifty-seven one-hundredths miles and is ninety-nine feet wide; that there are no stations, buildings or other structures with the exception of fences; that there are switch connections to the sidings of two industrial plants, and that the petitioners own water towers of sufficient capacity to satisfy their needs at that point. The town board, however, determined that the railroad property would be

486 MATTER OF SYRACUSE, B. & N. Y. R. R. CO. *v.* VAN AMBURGH.

Third Department, May, 1928. [Vol. 223

benefited. No determination has yet been made of the benefits to the respective parcels of property within the district for the purpose of assessment and the question presented is merely whether the property of the petitioners will be benefited at all.

It cannot be said, as a matter of law, that the property of the petitioners will not be benefited, for there is no statute exempting a railroad corporation generally from sharing the burdens of local taxation for the purpose of establishing and maintaining a water district, nor is there any rule of law based on the decisions of the courts to that effect, and, therefore, the determination of the town board cannot be annulled as a matter of law.

Ordinarily, the question as to whether a benefit will arise is one of fact. The Legislature has delegated the power to the town board to determine the question of benefit and its determination is judicial and may be reviewed by certiorari. (Gen. Dist. Law, § 7; Civ. Prac. Act, § 1284.)

While the record is unsatisfactory in that the evidence bearing upon the question is meager, it is determined from the facts set forth in the petition and the return, the testimony of the petitioners' witnesses and the maps introduced in evidence, that the petitioners will receive some direct benefit from the establishment of a water district and some indirect benefit. The direct benefit which they will receive consists solely of comparatively slight fire protection, in case of grass fires along the right of way, or fires originating in combustible material permitted to accumulate on railroad property, or fires in freight cars on sidings.

The petitioners will be indirectly benefited, since the water supply through the fire hydrants will offer protection to the industrial plants adjoining their line, from which they receive shipping.

CERTIORARI ORDER granted out of the Supreme Court on the 21st day of September, 1927, entered in the office of the clerk of the county of Broome on the 22d day of September, 1927, directed to Charles Van Amburgh, Jr., supervisor of the town of Fenton, and others, commanding them to certify and return to the office of the clerk of the county of Broome all and singular their proceedings had in establishing a water district in said town.

*Stanchfield, Collin, Lovell & Sayles* [*Halsey Sayles* of counsel], for the petitioners.

*Moody & Chamberlain* [*C. L. Chamberlain* of counsel], for the respondents.

DAVIS, J. It is provided in chapter 470 of the Laws of 1926, known as the General District Law, in brief that public districts may be created for the purpose of carrying on one or more public functions intended to benefit generally the inhabitants or the property of such district. In August, 1927, the town board of Fenton, Broome county, upon petition undertook to organize a water district with certain specified boundaries. A portion of the right of way of a railroad owned by the Syracuse, Binghamton and New York Railroad Company and leased by the Delaware, Lackawanna and Western Railroad Company was included in the district.

At a public hearing these corporations appeared by counsel in opposition to the project, filed written objections and, among other things, asked the town board to determine that their property was not benefited by the creation of the proposed district. The statute provides that only property benefited may be included. (Gen. Dist. Law, § 4.)

On the hearing evidence in the form of maps and oral testimony was offered by the corporations. It was shown that the railroad property within the district was one and fifty-seven one-hundredths miles long and ninety-nine feet wide, running generally north and south; that there were no stations, buildings or other structures thereon; that the road was double tracked with switch connections to the sidings of two industrial plants; that the right of way laterally was bounded by standard wire fences supported by wooden posts, with wooden wing fences in one or two places; and that telegraph poles were set along the right of way carrying some wires belonging to the railroad. The railroad owns water towers of sufficient capacity located a short distance north and south of the district, so that the necessity of its further water supply for locomotives need not be considered.

The town board made an order establishing the district and filed and recorded it in the county clerk's office. It was determined that the railroad property would be benefited. This proceeding has been instituted to review their determination. For convenience and brevity we will hereinafter term the petitioners the plaintiffs and the town board the defendant. (Civ. Prac. Act, § 191.)  The county clerk is but a formal party without interest in the controversy.

It should be understood at the outset of the discussion that no determination has yet been made of the benefits to the respective parcels of property within the district for the purpose of assessment. The question of apportioning the cost is quite different from that of determining whether any property may be taxed at all. (*Hancock v. City of Muskogee*, 250 U. S. 454, 457.) We have here to consider only the question of whether there is or will be any benefit whatever to the railroad property. The town board has found that such benefits exist; the plaintiffs say there can be no benefit.

The argument of the plaintiffs is that both as a matter of law and as a question of fact there is no benefit. The questions, then, are comparatively simple, although not without difficulty in determination. The claim that the railroad property is not benefited as a matter of law means that it is exempt either by statute or under some well-established legal doctrine, or that there is no evidence whatever that it may be benefited. There is no statute exempting

488   MATTER OF SYRACUSE, B. & N. Y. R. R. Co. *v.* VAN AMBURGH.

Third Department, May, 1928.          [Vol. 223

a railroad corporation generally from sharing the burdens of local taxation. (*New York Central & H. R. R. R. Co.* v. *City of Yonkers*, 238 N. Y. 165, 173.)

The question of evidence of benefit will be presently discussed. We will, therefore, give attention to the question as to whether the doctrine prevails that the main line of a railroad can receive no benefit from an improvement of the nature of that here considered. To support his claim the learned counsel for plaintiffs relies chiefly upon the authority of *New York, N. H. & H. R. R. Co.* v. *Village of Port Chester* (149 App. Div. 893; affd., 210 N. Y. 600). That was a street improvement case where it was sought to assess a part of the cost of grading and paving upon the adjacent railroad property. The level of the railroad track was above that of the two streets which passed underneath. It was held that the railroad derived no benefit from the improvement and the village was enjoined from enforcing the assessment. In part the decision seems to rest on the public policy of the State manifested in a statute that imposed upon a municipality the burden of maintaining streets passing under a railroad. (Railroad Law [Gen. Laws, chap. 39; Laws of 1890, chap. 565], § 64, added by Laws of 1897, chap. 754, as amd.; now Railroad Law, § 93, as amd.) In part it seems to have been held that as the property of the railroad was exclusively devoted to a public use, the benefits were not established as a question of fact on the trial. (See p. 895.) This general doctrine was followed in other street improvement cases. (*People ex rel. New York, W. & B. R. Co.* v. *Waldorf*, 168 App. Div. 473; *New York, W. & B. R. Co.* v. *City of New Rochelle*, 170 id. 915; *Matter of City of New York* [*Blondell Ave.*], 180 id. 430.) This rule of exemption for street improvements is not universally recognized. (See *Illinois Central R. R. Co.* v. *Decatur*, 147 U. S. 190.)

It is apparent from more recent decisions in the Court of Appeals that there is no purpose to extend the rule of exemption. (See *Matter of City of New York* [*Juniper Ave.*], 233 N. Y. 387, 392; *New York Central & H. R. R. R. Co.* v. *City of Yonkers, supra.*) Beyond the limits of the rule in the *Village of Port Chester Case* (*supra*) relating to street improvements, it seems unsafe to go. The weight of authority in this and other jurisdictions is against exemption as a matter of law. If benefits actually exist, present or prospective, the railroad may not escape liability on the ground that its property is devoted to a public use, and the benefits it receives are less tangible than those conferred upon other lands.

In *Troy & Lansingburgh R. R. Co.* v. *Kane* (9 Hun, 506; affd., on other grounds, 72 N. Y. 614) the railroad was deemed benefited to some extent at least by the construction of a sewer in the streets

of a city. In *Thomas* v. *Kansas City So. R. Co.* (277 Fed. 708; affd., 261 U. S. 481) the benefit was derived from the improvement of a drainage district. In *Sebastian Bridge Dist.* v. *Missouri Pac. R. Co.* (292 Fed. 345) the beneficial improvement was a bridge; and in *Branson* v. *Bush* (251 U. S. 182) the benefits arose to the main line of a railroad because of highway improvements. (See, also, *Minneapolis, St. P., etc., R. Co.* v. *City of Minot*, 51 N. D. 313; *Kansas City, P. & G. R. Co.* v. *Waterworks Imp. Dist.*, 68 Ark. 376.) The case of *Bensenville* v. *Chicago, M. & St. P. R. Co.* (316 Ill. 352) is urged upon our attention. There the railroad property assessed abutted only in part upon the street where the water main was laid. The railroad had previously installed a water supply of its own adequate for all purposes, including fire protection. The facts shown on the trial were deemed insufficient to establish benefit, being too remote and imaginary. There is nothing here contrary to the doctrine in the cases above cited.

We find in the authorities cited no rule of exemption as a matter of law. There is no special reason why railroad property should escape fair local taxation if some benefit is derived. It is often difficult to discover the benefit given to individuals whose property is within the tax district assessed for local improvement, but the tax must be paid. It is urged that in some of the authorities cited which hold the railroad liable, the Legislature itself determined the question of benefit. That cannot affect the determination here, as we shall presently point out. We hold, therefore, that the determination cannot be annulled as a matter of law. In so holding we have eliminated from discussion as not applicable the rule that an assessment may be void as a matter of law where its purpose and the acts of those making it are so arbitrary and unjust that it amounts to confiscation of property and denial of due process. (*Matter of Long Island R. R. Co.* v. *Hylan*, 240 N. Y. 199; *People ex rel. W. N. Y. & P. R. R. Co.* v. *Adams*, 88 Hun, 122; affd., on opinion below, 147 N. Y. 722; *Kansas City So. R. Co.* v. *Road Imp. Dist. No. 6*, 256 U. S. 658.) There has been no assessment here.

The question as to whether a benefit will arise is ordinarily one of fact. (*Matter of City of New York* [*Juniper Ave.*], *supra*; *Spencer* v. *Merchant*, 100 N. Y. 585, 588; affd., 125 U. S. 345.) The Legislature might have fixed the boundaries of the district and determined what property would be benefited. (*Bauman* v. *Ross*, 167 U. S. 548, 589.) Had the Legislature enacted that the railroad property within the district would be benefited and should be taxed with other property, it would have determined conclusively the question of fact (presumably upon inquiry), and there

490  Matter of Syracuse, B. & N. Y. R. R. Co. *v.* Van Amburgh.

Third Department, May, 1928.                    [Vol. 223

could be no review. (*Spencer* v. *Merchant, supra; Fallbrook Irrigation Dist.* v. *Bradley,* 164 U. S. 112, 174.) But it has delegated the power to the town board and their determination of the question is judicial in its nature and may be reviewed. (Gen. Dist. Law, *supra,* § 7; Civ. Prac. Act, § 1284; *Embree* v. *Kansas City Road Dist.,* 240 U. S. 242; *Fallbrook Irrigation Dist.* v. *Bradley, supra,* 175.) The principle is essentially the same by whatever authority the fact is determined. (*Hancock* v. *City of Muskogee,* 250 U. S. 454, 458.)

In seeking to pass upon the question of fact we are met with difficulties due to the unsatisfactory state of the record; no evidence was offered on the part of the defendant, and the petition, order and minutes upon which the determination was made were, to a large extent, deficient in facts material to the vital question. We have the facts set forth in the petition and return, the testimony of plaintiff's witnesses, and the maps introduced in evidence. Certain facts, admitted or undisputed, were stated on the argument, and we are at liberty to draw the inferences and make use of the knowledge of common experience undoubtedly drawn and used in making the determination. The sole question is, was there sufficient evidence to justify the determination. (Civ. Prac. Act, § 1304, subd. 5.)

We are of the opinion that there may be benefits, some direct and some indirect in their nature, those indirect not being so remote as to be speculative and fanciful. The direct benefit consists solely of comparatively slight fire protection. Grass fires may start along the right of way and spread to the poles, posts or the wing fences; a fire might originate in combustible material negligently permitted to accumulate on railroad property and spread upon the lands of abutting owners, rendering the plaintiffs liable for damages (*Hoffman* v. *King,* 160 N. Y. 618); or freight cars on the siding may get on fire by some means. In any such case the protection to be obtained from fire hydrants and water supply will be of advantage.

Located near the tracks of the plaintiffs within the district are two industrial plants connected by switches with the railroad. Products of those factories are shipped over this line. There is no competing railroad. It was argued by the defendant that this territory was peculiarly adapted to the location of industries and that other factories were likely to be there located if fire protection and water supply are furnished by this district; but of this there is little proof. Taking the facts as they are, we think it a fair inference to say that if the factories now existing have water for use in manufacture, for sanitary purposes and fire protection, production

and the chances of the permanency of the factories will be increased and the property of the plaintiffs will thereby be benefited. If a fire occurred in one of the plants and it was destroyed, shipments would cease. The chance of its being rebuilt where such a catastrophe could occur again, would not be the same as it would if protection were at hand. The value of a railroad does not consist exclusively of the land, rails, ties and structures, but the use to which it is put, and the profitable nature of that use, present and prospective. (*Branson* v. *Bush, supra,* 186, 187; *Cleveland, etc., R. Co.* v. *Backus,* 154 U. S. 439, 445.) The traffic which it obtains from the territory it serves gives income and value. As agriculture, manufacturing and commerce increase along its lines, its prosperity naturally rises and its property value increases. These benefits, indirect in their nature, are nevertheless tangible, and may be sufficient to authorize assessment if there is reasonable ground to anticipate that such results will follow. Here the amount of benefit is one of degree, small in comparison with the value of the entire railroad property, but in fact existent. " The amount of benefit which an improvement will confer upon particular land, indeed whether it is a benefit at all, is a matter of forecast and estimate." (*Louisville & N. R. R. Co.* v. *Barber Asphalt Co.,* 197 U. S. 430, 433.) The amount is not now in question but will be the subject of further proof when the actual assessment is made.

The determination should be confirmed and the certiorari order dismissed, with fifty dollars costs and disbursements.

VAN KIRK, P. J., WHITMYER, HILL and HASBROUCK, JJ., concur.

Determination of the town board confirmed, and the certiorari order dismissed, with fifty dollars costs and disbursements.