WELLINGTON KENWELL, Plaintiff, *v.* CHARLES F. LEE, as Supervisor of the Town of Inlet, Hamilton County, New York, and Others, Defendants.

Supreme Court, Hamilton County, January 2, 1932.

*Snyder, Cristman & Snyder*, for the plaintiff.

*Alton C. O'Hara*, for the defendants O'Hara, Williston, Puffer and Wood.

*Oliver D. Burden*, for the defendant Hall.

*J. Theodore Cross*, for the defendant Tiffany.

*Frederick Kronmiller*, for the defendant Breen.

ROGERS, J.  The town board of the town of Inlet, Hamilton county, established a water district, appointed the water commissioners thereof and authorized the construction of a water system.  The project has been approved by the Water Power and Control Commission.  The Commission has also approved the use of Bug lake, on State Forest Preserve lands, as a reservoir and source of supply for the system.  Contracts for the construction work have been let.  Town bonds for the cost of the undertaking have been authorized and sold, but delivery and payment therefor have not been made.

The plaintiff instituted this taxpayer's action to have all proceedings in regard to the enterprise declared illegal and void; to restrain the issuance of the bonds; to have all expense incurred in connection with the project adjudged payable by the members of the town board and the water commissioners named as defendants.

The complaint alleges that there was lack of jurisdiction in the town board, the water commissioners and the Water Power and Control Commission to do and perform the various acts done and performed by them in the proceedings.

Inasmuch as a majority of the taxpayers, both in number and in the amount of their assessments, desire a water system, and all of the officials, except the supervisor, both town and State, having any jurisdiction regarding the matter have favored and approved the project, a court of equity should be most reluctant to thwart the wishes of the taxpayers and discourage the efforts of the public officials by declaring some minor step omitted in the statutory procedure fatal, or by overstressing the importance of some illegality. As the requisite notices were given and hearings had; as the plan has been carefully considered by competent experts and pronounced feasible and economical, and as no waste of public moneys seems likely, this court of equity should strive to uphold the proceedings.

In *Lawson* v. *Lincoln* (86 App. Div. 217; affd., 178 N. Y. 638) the court said: " The objections raised are merely technical, that the law has not been strictly complied with in every step taken by the board of education. Under such circumstances, a court of equity will not struggle to find a way to set aside what has been done and to enjoin the continuance and completion of the project of furnishing the school district with a new and needed school building."

In *Mead* v. *Turner* (134 App. Div. 691) the court said: " We do not feel called upon to decide whether at the special election held with reference to this contract the provision above referred to was applicable, for if it was we think that there would be a substantial compliance with the requirements of the statute."

In *Altschul* v. *Ludwig* (216 N. Y. 459) the court said: " The mere illegality of the official act in and of itself does not justify injunctive relief at the request of the taxpayer. To be entitled to this relief, when waste or injury is not involved, it must appear that in addition to being an illegal official act the threatened act is such as to imperil the public interests or  *  *  *  produce some public mischief."

In *Western New York Water Co.* v. *City of Buffalo* (242 N. Y. 202) the court said: " It was not the intention of the statute that a taxpayer shall be allowed to intervene and bring to the decision of the courts every act of a municipal officer which may be claimed to be illegal although concededly it is entirely innocuous."

One of the plaintiff's main contentions is that the contracts are let for the construction of a system in accordance with the so-called Wheeler map, instead of in accordance with the Alcook

map, which accompanied the original petition, and that, therefore, a system substantially different from the one asked for by the petitioners will result. There is a departure from the map and plans presented by the petitioning taxpayers for approval, but (with the exception of the Eagle bay extension, which requires special consideration) not so substantial and radical as to invalidate the proceedings. The changes were made for economical and sanitary reasons and resulted in reduced costs and more potable water. The Town Law (§ 283, as amd. by Laws of 1928, chap. 439) provides that there shall be annexed to the petition of the taxpayers to establish a water district a map and plan showing " the sources of water supply, and a description of the lands, streams, water or water rights to be acquired therefor, and the mode of constructing the proposed water works, and the location thereof, including reservoirs, water mains, distributing pipes and hydrants."

To comply with this section the petitioners had the Alcook map prepared. It was not physically annexed to the petition, but was available to the signers when the petition was circulated and was filed with the petition in the town clerk's office. The map is somewhat large and cumbersome while the petition is relatively small. The failure to annex the map to the petition is not a fatal omission. Inasmuch as the map accompanied the petition and was finally filed with it there was a substantial compliance with the statute requiring it to be annexed to the petition. In *Matter of Ludlam* v. *Town Board of Oyster Bay* (219 App. Div. 189) the record on appeal shows that the petition did not have the map annexed to it, and that it was only shown to the signers on request. The appellate court held that the proceedings were substantially regular to satisfy the statute.

The Town Law, section 284, prior to the amendment of 1928 (Laws of 1928, chap. 498) placed the expense incurred in attempting to organize a water district upon the persons signing the petition if the district was not organized. The maps and plans required by the statute to be annexed to the petition are contemplated to be more or less preliminary and general. The Legislature did not intend to require the petitioners to have prepared at very considerable expense the detailed and final maps for the project. After the town board (following a public hearing) established the water district, authorized the construction of the water system, and appointed the commissioners of the district (as provided by section 285*), then it became the duty of the water commissioners (Conservation Law, § 523†) to petition the Water Power and

---

* Amd. by Laws of 1931, chap. 723.— [Rep.

† Formerly § 522; renum. § 523 by Laws of 1928, chap. 242.— [Rep.

Control Commission for the approval of the plans of the proposed water system. Such petition must be accompanied by detailed maps and profiles and much data not required to be shown on the maps and plans accompanying the taxpayer's petition. The water commissioners employed an experienced engineer to prepare the information necessary for the Water Power and Control Commission's action. Conferences were held between the engineer for the Commission and the engineer employed by the water commissioners. Finally a map and plan, termed the Wheeler map, was presented to the Commission and received its approval. The detailed Wheeler map differs from the Alcook general plan, with the exception of the Eagle bay extension, only in engineering features, such as the size of the pipes, number and location of hydrants, the erection of a standpipe and the installation of chlorinization facilities. The petitioning taxpayers contemplated such change in engineering features as the supervising Water Power and Control Commission might reasonably require, provided the plan as changed by the Commission was designed to adequately serve the community and the cost therefor was not increased.

At first blush, the extension of the service mains from Rocky point to Eagle bay, a distance of 7,350 feet, seems a radical departure from the original map. It appears, however, that at the town board meeting August 25, 1930, when the water district was established and the system approved, some of the petitioners claimed that the original map that had been exhibited to them showed a pipe line from Rocky point to Eagle bay. There was considerable discussion on the subject and the minutes of the evening session read: " Decided that the town board had the power to stop proceedings if the water commission ran the line only to Rocky Point Inn."

The Water Power and Control Commission (Conservation Law, § 523), after notice and a public hearing, is required to pass upon objections, " and hear the proofs and arguments submitted in support of and in opposition to the proposed project," and the Commission shall determine whether the plans proposed are just and equitable to the inhabitants of the district. And the Commission is given authority to modify the plans in the interest of the inhabitants of the district. The section also provides that the decision of the Commission and its action may be reviewed by certiorari proceedings. No objection was filed with the Commission that the original plan did not embrace the extension to Eagle bay and no certiorari proceedings were instituted to review the Commission's decision, approving such extension and the other changes in the original plan. Inasmuch as the Commission is given authority to pass upon the question whether the plans given are just and equitable

to the inhabitants and to make such changes as are necessary to reach a just and equitable result, its decision is a determination of fact reviewable only in the manner specified by the statute. The Commission had jurisdiction to change the original plan within reasonable limits and it must be now accepted that it was for the best interests of the inhabitants of the water district to have the mains extended to Eagle bay. Sections 296-a\* and 296-b† of the Town Law, entitled " Extension of system," apply to a water system that is already constructed and in operation, and are inapplicable to a situation like the one here where the water system is not yet built.

The plaintiff contends that the use of Bug lake as the source of supply is without constitutional warrant and that even if a natural lake in the Forest Preserve is permitted by the Constitution to be used for a municipal water supply the action of the Water Power and Control Commission in permitting the use of the lake is null and void, because the expense has been apportioned solely upon the water district and not upon the private property benefited to the extent of the benefits received, as required by the Constitution. These claims cannot be sustained. The Constitution ordains (Art. 7, § 7) that the Legislature may by general laws provide for the use of a portion of the Forest Preserve lands, for the construction and maintenance of reservoirs for municipal water supply. The Legislature, exercising this grant of authority, has enacted article 13 of the Conservation Law (added by Laws of 1920, chap. 551, as amd. by Laws of 1928, chap. 242) which provides the method of obtaining consent to use State lands for municipal water supply purposes. The People, in adopting article 7, section 7, intended to make possible such use of any Forest Preserve lands within the quantity and under the restrictions specified in the section. It makes no difference, therefore, that the lands here involved embrace a natural lake. Large storage reservoirs to regulate the flow of streams (also authorized by the section) could hardly be constructed without including within the reservoir area small streams and small bodies of water. It was the use of water on State lands for municipal water supply purposes that the People had in mind in adopting the amendment, whether the water was already stored in a natural reservoir as a lake, or whether it was to be artifically stored by means of a dam. In either case the storage basin is a reservoir. If construction of a reservoir must be had in order to satisfy the language and intent of the constitutional provision, the evidence is that an intake pipe is to be run

---

\* Added by Laws of 1923, chap. 534, as amd. by Laws of 1926, chap. 522.—[Rep.

† Added by Laws of 1926, chap. 522.—[Rep.

into the lake and that certain other construction work is necessary to make the water of the lake available for the water system.

The provision in article 7, section 7, requiring the high flow line to be accurately surveyed was intended to apply to an artificial reservoir where the known lines of flow did not exist. There is no necessity for an accurate survey of the high flow lines of a lake the upward level of which is not to be changed. However, the maps in evidence showing the high-water lines of the lake are sufficient to meet the requirements of the Constitution. Moreover, the constitutional provision is that the work of construction shall not be undertaken until the high flow lines are accurately surveyed. If the survey already made is not sufficiently accurate this defect could be remedied before the construction work is undertaken.

The Constitution (Art. 7, § 7) provides: "The expense of any such improvements shall be apportioned on the public and private property and municipalities benefited to the extent of the benefits received."

The Conservation Law (§ 542) provides: "If said application is approved, the commission shall apportion the expenses of the proposed project on the public and private property to be benefited thereby, such apportionment to be to the extent of the benefits received by such property; it shall also fix the amount to be paid to the State by the property and municipalities benefited."

The plaintiff argues that the constitutional provision is not self-enforcing and there being no law giving the Commission authority to place the expense upon a municipality, that its decision apportioning the expense on the water district, which in effect is placing it upon the town, is a nullity and, moreover, that such an apportionment is not in accordance with the direction that the expense must be distributed in accordance with the benefits received, because all the town property is not equally benefited.

It seems to me that the constitutional provision is satisfied if the expense of the work that the State performs on the State land is incorporated into the sum total raised by the town for the construction of the water system. This result has been accomplished by the Water Power and Control Commission passing the expense on to the water district where it is to be taken care of along with other construction expense, as provided by the Town Law. The water commissioners establish water rents (§ 293, as amd. by Laws of 1929, chap. 592) which are applied on the principal and interest of the bonds (§ 297, subd. 4). The balance due for payment of the bonds and interest is raised by tax on the taxable property in the water district (§ 289). The town board decided that the property in the entire town would be

benefited by the proposed water system. This decision may be reviewed only by certiorari. (*Matter of Syracuse, etc., R. R. Co. v. Van Amburgh,* 223 App. Div. 485.) The argument to support such decision seems to have some merit. It is, that fires starting within the area served by the water system may be controlled and a spread of fire to the forests prevented. The water users pay water rents supposedly equivalent to the value of the service. These rents are applied toward the payment of the bonds. In this way the cost of the system is at least partially equalized. It would be very difficult to exactly equalize the benefits. The petition did not contain, as permitted by the Town Law (§ 290-a, added by Laws of 1926, chap. 500, as amd. by Laws of 1927, chap. 643), the statement that the cost of construction of the water system shall be assessed from year to year by the water commissioners of the water district in proportion as nearly as may be possible to the benefit which each lot or parcel will derive therefrom. Therefore, the tax for the payment of the bonds is raised on all the taxable property in the town, as provided by section 289 of the Town Law.

In *People ex rel. Zerega* v. *Markvart* (230 App. Div. 767) the court said: " It is our opinion that the relator's real property was not exempt from taxation for the support of the water and fire districts, legally created, within which her premises are situated, simply because there has been *no direct service or benefit* to her premises from said water and fire districts."

The plaintiff makes a claim that the acts of the defendants are confiscatory of his property. The statute (Conservation Law, § 523) gives the Water Supply and Control Commission authority to protect the interest of an owner of an existing water works system, but plaintiff filed with the Commission no objection or complaint that the construction of the new system would result in confiscation of the existing system. Had plaintiff presented that claim to the Commission, it might have amended the plan so as to embrace the use of some, if not all, of the existing system. It is too late for the plaintiff to receive relief through the court. It does seem, however, that the water commissioners should make every effort to find some practical way by which the plaintiff's system may be used and a reasonable amount allowed therefor. The additional rentals should be an inducement to acquire it.

The statute (Town Law, § 285, as amd. by Laws of 1931, chap. 723) authorized the town board at the public hearing following the filing of the petition not only to hear allegations as to all matters stated in the notice of the hearing, but " upon any other matters affecting or relating to the establishment of said proposed district and the construction of said proposed improvement

therein, as they may deem just and equitable," and shall thereupon make their order. Therefore, all questions regarding the sufficiency of the petition and the signing thereof and all objections made at the public hearing were passed upon judicially by the town board, and may not be attacked collaterally, but may be reviewed directly in a certiorari proceeding timely instituted. (General District Law [Laws of 1926, chap. 470], §§ 5, 7; *Eastman Kodak Co.* v. *Richards,* 123 Misc. 83; *Matter of Syracuse Railway Co.* v. *Van Amburgh,* 223 App. Div. 485; affd., 251 N. Y. 548.)·

Where no fraud is established, lack of jurisdiction may not be raised when the jurisdiction depends upon a question of fact. The town board had power to determine the facts giving rise to its jurisdiction. Its acts in establishing the district, approving the project, appointing the commissioners, became final and conclusive, subject only to review in a direct proceeding. (*Matter of Doey* v. *Howland Co.,* 224 N. Y. 30.)

There are some general allegations of fraud in the complaint, the sufficiency of which are challenged by the defendants. (*Knowles* v. *City of New York,* 176 N. Y. 430, 437; *Press Publishing Co.* v. *Holahan,* 29 Misc. 684; affd., 54 App. Div. 638; *Daly* v. *Haight,* 170 id. 469; affd., 224 N. Y. 726.)

No fraud has been shown. The claim that the water commissioners deceived the Water Power and Control Commission by withholding information and by not advising the Commission that the original plan did not include the Eagle bay extension is not sustained by the proof. Again, if any petitioner was induced to sign the petition by misrepresentation as to the area of the system or as to the purchase of the Lee system, such misrepresentation was not that of any of the defendants acting in an official capacity. The water district was not then formed and the time had not arrived when any defendant acted officially. It is only for breach of duty in regard to official acts that they are being sued in this action.

There were no illegal or unauthorized acts performed by any of the defendant officers, and no collusion on their part. They have acted in utmost good faith throughout the proceedings. There has been no waste of public funds and none is threatened. There is no reason why the defendants should pay the expense of the project, even if it had been determined that they were without jurisdiction to act. The only support for the claim that they knowingly acted without jurisdiction is that they took further proceedings after the plaintiff filed with them his belated objections stating that they were without jurisdiction to act. They followed the advice of their attorney and at all times believed that they

were proceeding lawfully. For an innocent mistake, as to the extent of their jurisdiction, they may not be held liable any more than the members of the Water Power and Control Commission could be for a similar erroneous idea as to the extent of their authority. This action is brought under section 51 of the General Municipal Law, which contemplates personal liability of a colluding and defaulting official. (*Stetler* v. *McFarlane*, 230 N. Y. 400; *Daly* v. *Haight*, 170 App. Div. 469.)

The complaint should be dismissed, with costs.